643 F.2d 1305
 Fed. Sec. L. Rep. P 97,902
Otis M. JORSTAD and Ethel M. Jorstad, Appellees,
v.
IDS REALTY TRUST, a real estate investment trust; Appellant.
IDS Mortgage Corporation, a corporation; IDS Financial
Corporation, acorporation; Investors Diversified Services,
Inc., a corporation; AlleghanyCorporation, a corporation;
Charles R. Orem; H. Clifton Whiteman; William L.Mullins;
EugeneGelphman; Robert W. Taylor; John M. Cassidy; John A.
Rieder; Donald H. Bruer;J. William Buckley; Ernest U.
Buckman; Robert T. Cross; Eugene B. Hanson;Victor A. Lalli;
John M. LaVold; John W. Cochran; Bernie O. Snoddy; Howard
L.Imme; Walter M.Mischer; Robert R. Patterson, Jr. and Peat,
Marwick, Mitchell & Co., apartnership.
Otis M. JORSTAD and Ethel M. Jorstad, Appellees,
v.
IDS REALTY TRUST, a real estate investment trust; IDS
Mortgage Corporation, acorporation; IDS Financial
Corporation, a corporation; Investors
DiversifiedServices, Inc., a
corporation; Appellant.
Alleghany Corporation, a corporation; Charles R. Orem; H.
Clifton Whiteman; William L. Mullins; Eugene Gelphman;
Robert W. Taylor; John M. Cassidy; John A.Rieder; Donald H.
Bruer; J. William Buckley; Ernest U. Buckman; Robert
T.Cross; Eugene B.Hanson; Victor A. Lalli; John M. LaVold;
John W. Cochran; Bernie O. Snoddy;Howard L. Imme; Walter M.
Mischer; Robert R. Patterson, Jr. and Peat, Marwick,Mitchell
& Co., a partnership.
 Nos. 80-1289, 80-1290.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1980.
Decided March 10, 1981.
 
 Joe A. Walters, O'Connor & Hannan, and Peter Dorsey, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for appellant.
 Charles T. Hvass, Hvass, Weisman & King, Minneapolis, Minn., for appellees.
 Before ROSS, STEPHENSON and McMILLIAN, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This is an appeal from a final judgment of the United States District Court, 489 F.Supp. 1180, for the District of Minnesota[1] awarding $2,721,650.40 in attorneys' fees and expenses in a securities fraud class action. The parties signed a Stipulation of Settlement on the merits of the lawsuit which provided that class counsel were entitled to "some reasonable amount for attorneys' fees and expenses." The agreement was approved by order of the district court dated June 26, 1978. No appeal was taken from that order. This appeal challenges only the district court's March 13, 1980 order awarding fees and expenses pursuant to the Stipulation of Settlement.
 
 
 2
 The original complaint in this action was filed on August 10, 1976, by Otis and Ethel Jorstad, the purchasers of a $5,000 series E subordinated debenture from IDS Realty Trust (Trust). Between 1972 and 1974, the Trust and its underwriter, Investors Diversified Services, Inc. (IDS), sold five separate series of the subordinated debentures (series A-E).[2] A registration statement and prospectus was filed with the Securities and Exchange Commission in connection with the public offering of each series of the debentures, pursuant to the requirements of the Securities Act of 1933. The Jorstads' complaint asserted that these statements and prospectuses contained misrepresentations or omissions of material facts:
 
 
 3
 The Registration Statement and each of the prospectuses used by defendants Trust and IDS as part of the solicitation, offer and sale of said debentures contained misrepresentations and untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
 
 
 4
 The Jorstads sought class certification to assert the claims of the more than 25,000 persons holding interests in Trust's debentures against defendants Trust, IDS, IDS Mortgage Corporation, IDS Financial Corporation, Alleghany Corporation, the officers and trustees of Trust, the officers and directors of IDS, and Peat, Marwick, Mitchell & Co., Trust's certified public accountants. The complaint requested rescission of the sale of the debentures and a refund of the purchase price, or recovery of the damages resulting from the alleged violations of the securities laws.
 
 
 5
 * The findings set forth in Judge Lord's March 13, 1980 order provide the background for our inquiry. IDS Realty Trust was organized in 1971 as a Real Estate Investment Trust (REIT), pursuant to the Internal Revenue Code, for the purpose of accumulating capital and loaning it to builders and developers. Almost $200 million was accumulated through the sale of the five series of debentures. The debentures were sold by IDS' sales force and were purchased with the understanding that a Limited Reserve Fund would be established and maintained so that the debentureholders could liquidate their investment prior to maturity.
 
 
 6
 By 1975, as Judge Lord pointed out, "the Trust was in serious financial difficulties." One expert testified at the hearing on the fee application that Trust was hopelessly headed for bankruptcy at the time the Jorstads' lawsuit was filed. In July of 1976, as a result of the economic distress, IDS' sales force obtained the consent of the debentureholders to suspend payments to the Limited Reserve Fund until 1983. The investors were also informed that Trust was unlikely to remain a viable business entity without a significant improvement in the real estate industry or without further concessions from its creditors. As a result of these actions, the Jorstads sought the counsel of Mr. Hugh V. Plunkett of the lawfirm of Plunkett, Schmitt & Plunkett. This lawsuit was filed one month later.
 
 
 7
 Seventeen pretrial hearings or court appearances took place between the filing of the complaint and the hearing on the Stipulation of Settlement on June 26, 1978. A hearing on the motion for class certification was scheduled for February 3, 1977, but was postponed until April 4, 1977. The hearing was further delayed when the defendants initiated settlement negotiations.
 
 
 8
 Class counsel responded to the defendants' overtures by indicating their willingness to consider the same cash discount (80% of the principal amount) that Trust's bank creditors had previously accepted if an immediate cash payment for the debentures would be made. A formal demand was submitted by class counsel on July 18, 1977, which would have required the Limited Reserve Fund payments to have been reinstated retroactively and would have guaranteed 80% of the outstanding debentures. Judge Lord found that the guarantee would have required a commitment by IDS of $122 million. The defendants then called off the negotiations.
 
 
 9
 On August 16, 1977, hearings on the class certification motion commenced. IDS then proposed a plan of financial assistance to Trust which would have required a release of all claims of the debentureholders in exchange for a tender offer of $34 million for the purchase of $42.5 million of debentures at 80% of the principal amount. The plan was ultimately rejected.
 
 
 10
 On August 19, 1977, Judge Lord certified the lawsuit as a class action on behalf of the holders of all of the five series of debentures. The Austin, Minnesota lawfirm of Plunkett, Schmitt & Plunkett and Popham, Haik, Schnobrich, Kaufman & Doty, a Minneapolis lawfirm, were designated as cocounsel for the class. Class counsel had previously moved for an order limiting direct communications between the defendants and the debentureholders. Because Judge Lord "viewed the adversary posture of the defendants versus the debentureholders to be the best guarantee of fair dealing between them as to the tender offer," the limiting order was also entered on August 19.
 
 
 11
 Shortly after the certification of the class, IDS' formal offer of the $34 million financial assistance plan was rejected by class counsel as inadequate. IDS and Trust then let it be known that they intended to proceed with the plan regardless of whether or not a settlement could be reached. IDS and Trust argued that they had a right to communicate with their customers without going through the counsel for the class, and a proxy statement describing the terms of the $34 million financial assistance plan was mailed to Trust's shareholders on November 29, 1977.
 
 
 12
 Class counsel responded to this communication with the shareholders by seeking the district court's approval of the plan as only a partial settlement. Before the court ruled on the motion, however, the settlement negotiations were reopened and the Stipulation of Settlement was signed.
 
 
 13
 The major feature of the settlement was the Trust's tender offer of $52 million for the purchase of up to $65 million of debentures at 80% of the principal amount of purchase. Trust was also obligated to purchase as many of the debentures which exceeded the $52 million fund as possible. IDS funded the bulk of the tender offer with a cash payment of $34 million and an agreement to loan and to guarantee loans for the remainder of the amount. A $6 million revolving loan commitment from IDS to the Trust was also established so that IDS would be at risk to the extent of the loan commitment if the Trust should default on the outstanding debentures and the debentureholders received less than 100% of the principal of their investment. Finally, the settlement provided that no attorneys' fees would be deducted from the $52 million tender offer.[3]
 
 
 14
 The Stipulation of Settlement was approved by order of the district court on June 26, 1978. The fee application was submitted by class counsel on July 28, 1978, requesting $3,161,132 in fees and $56,342.71 for expenses. On February 8, 1979, after months of discovery, an amended complaint was filed. Affidavits which were submitted subsequent to that date revised the final request to $4,161,132 in fees on the settlement and $722,900 for prosecuting the fee application (bonuses for risk and quality were included in these figures). Expenses of $56,342.71 and $63,798.69 were requested for work on the settlement and the fee application, respectively. The total request was for $5,004,173.40.
 
 
 15
 IDS and Trust disputed the reasonableness of the fee request and argued that no award for time or expenses should be made in connection with the processing of the fee application. The defendants also challenged the hourly rate requested and questioned whether all of the hours expended by class counsel were necessary. Finally, IDS and Trust contended that the benefits of the settlement were not solely or even principally attributable to the class counsel's efforts.
 
 
 16
 The hearing on the fee application began on February 22, 1979, and continued for three days. Detailed time and expense records were submitted by counsel for the class and counsel for the defendants. Many other documents were entered into evidence on behalf of all parties. Four witnesses were called by class counsel and one by the defendants. The witnesses stated their views on the benefits rendered by class counsel, the causal relationship between the efforts of class counsel and those benefits, the risk involved in taking on such a case, the quality of class counsel's work and the reasonable hourly rates for the work that was done.
 
 II
 
 17
 Judge Lord filed his Memorandum Awarding Attorneys' Fees and Expenses and his Findings of Fact, Conclusions of Law and Order for Judgment on March 12 and 13, 1980, respectively. After discussing the controlling legal standards, his conclusions as to the elements of the award were set forth at length.
 
 HOURS SPENT
 
 18
 IDS and Trust did not dispute the accuracy of the time records and affidavits submitted on behalf of counsel for the class. The defendants did, however, argue that the hours attributed to paraprofessional assistants should have been allocated to expenses, and the court agreed. Judge Lord thus concluded that counsel for the class expended a total of 4,564.4 hours prior to the settlement and 1,853.65 hours in the prosecution of the fee application. The affidavits and records submitted by the class counsel show the following breakdown of hours (and rates):
 
 
 19
 TABLE 1
 Status
-----------------------
ATTORNEY (Senior/ ACTUAL RATE RATE PRE- POST
 Associate) RATES REQUE- GRANT- SETTLEMENT SETTLEMENT
 STED ED HOURS HOURS
 (4/76-1/78)
Popham Firm
-----------
Wayne G. Popham S $75-80 $150 $125 2.0 5.6
Raymond A. Haik S $75-80 $150 $125 35.0 24.7
Roger W. Schnobrich S $75-80 $150 $125 .8 0.0
Denver Kaufman S $75-80 $150 $125 16.6 3.3
David S. Doty S $75-80 $150 $125 599.8 161.6
Robert S. Minish S $65-80 $150 $125 1648.3 881.0
G. Marc Whitehead S $65-77 $150 $125 .7 2.0
G. Robert Johnson S $70-77 $150 $125 1.0 0.0
Bruce D. Willis S $55-66 $150 $125 0.0 .5
James R. Steilen A $34-45 $ 80 $ 60 1.3 2.0
James B. Lockhart A $31-40 $ 80 $ 60 0.0 .5
Allen W. Hinderacker A $30-37 $ 80 $ 60 1.7 .7
Clifford M. Greene A $27-36 $ 80 $ 60 274.6 73.1
D. William Kaufman A $30-36 $ 80 $ 60 .8 1.4
Desyl L. Peterson A $27-32 $ 80 $ 60 105.3 .5
Larry D. Espel A $23-32 $ 80 $ 60 0.0 1.0
 ----------- ------------
Subtotal 2687.9 1157.9
Plunkett Firm
-------------
Hugh V. Plunkett, Jr. S $50 $150 $125 64.0 83.75
Hugh V. Plunkett III S $35-50 $150 $125 1812.5 612.0
 ----------- ------------
Subtotal 1876.5 hrs. 695.75 hrs.
TOTAL 4564.4 hrs. 1853.65 hrs.
 
 HOURLY RATE
 
 20
 The base fee requested by counsel for the class was $150 per hour for senior lawyers and $80 per hour for associates. Although these rates far exceeded the normal hourly rates of the attorneys involved (see Table 1, supra ), counsel for the class argued that the district court should take into its consideration the hourly rates charged for securities class actions nationwide, due to the national scope of the litigation. The defendants naturally sought to limit the hourly rates to those normally charged by the individual attorneys involved for noncontingent work.
 
 
 21
 The trial court considered the records and the testimony of all the witnesses concerning the actual hourly rates and the hourly rates of attorneys similar to class counsel in "skill, experience and nature of practice." The trial court also entered specific findings regarding the skill of the class counsel, their expertise, the quality of their work and the benefits which accrued to the members of the class as a result of their efforts. "Of particular importance," however, was the fact that Judge Lord drew on his "own knowledge of the nature of the work and experience of counsel for the class" and on his "own experience and knowledge of hourly rates charged by attorneys of like skill within the general area in which counsel practice." The final result was the court's granting of attorneys' fees which he considered to be consistent with the hourly rates charged in the field of securities litigation in the whole United States: $125 per hour for senior attorneys and $60 per hour for associates. Applying these rates yields a base fee or "lodestar" of $545,609.50 on the hours expended through settlement and $226,558.25 for the processing of the fee application.
 
 CONTINGENCY (RISK) AND QUALITY
 
 22
 The district court's findings regarding the risk involved in this litigation and the quality of representation by the class counsel are set out at length in his memorandum and in his findings of fact. Judge Lord concluded that class counsel were entitled to large increases for both factors, citing the complexity of the litigation, the time commitment involved, the fact that the liability of the defendants was never definite, the delay in recovery, the financial burdens involved in pursuing the settlement, and the overall uncertainty over whether there would even be a recovery for fees and expenses as the justification for the increase for risk. The quality of the work performed by class counsel was demonstrated in a lengthy discussion of the benefits conferred on the class through the Stipulation of Settlement. Judge Lord thus awarded $800,000 as an increase for risk and $800,000 as an increase for quality. This effectively raised the total rate for senior attorneys to $491.48 per hour and $236.80 per hour for associates.
 
 FEE APPLICATION AND EXPENSES
 
 23
 IDS and Trust contended that class counsel were entitled to no award for attorneys' fees and expenses incurred in the prosecution of the fee application. Although the Stipulation of Settlement was silent on the issue, Judge Lord concluded that such an award was justifiable under the circumstances of this case. It was found, specifically, that the efforts of class counsel in connection with the fee application benefited the class members because the class members' recovery was in no way diminished by the additional allowance of attorneys' fees.
 
 
 24
 In addition to the allowance for the processing of the fee application, Judge Lord increased the base fee figure of $226,558.25 by $225,000 to reflect the risk involved in this phase of the litigation.
 
 
 25
 The district court also reviewed the breakdown of expenses incurred in connection with both phases of this litigation and the testimony of the witnesses as to the reasonableness of those expenses. Since no evidence was offered to controvert the reasonableness of class counsel's request, the expenses, which are included in the summary below, were found to be reasonable and just.
 
 SUMMARY:
 
 26
 The district court's award is broken down as follows:
 
 Attorneys' Fees:
 
 27
 A. Base fee for time spent on the
 merits: 545,609.50
B. Increase for risk on the merits: 800,000.00
C. Increase for quality on the merits: 800,000.00
D. Base fee for time spent on
 application: 226,558.25
E. Increase for risk on application: 225,000.00
 --------------
 Total Fees: $ 2,597,167.75
Expenses:
A. Legal assistants and law clerks: $ 4,341.25
B. Expenses incurred on the merits: 56,342.71
C. Expenses incurred on application: 63,798.69
 --------------
 Total Expenses: $ 124,482.65
 
 III
 
 28
 On appeal, IDS and Trust challenge several aspects of the district court's award. First, it is asserted that the base fee or "lodestar" must be based on the actual hourly rates charged by class counsel in noncontingent work. Second, it is claimed that the increases or "multiples" allowed for quality and risk were excessive. Third, it is claimed that the district court erred in awarding attorneys' fees for time spent in furtherance of the fee application, and particularly in increasing that amount for the risk involved in the processing of the fee application. Fourth, it is claimed that counsel for the class should have been sanctioned for their "unreasonable" fees request.
 
 
 29
 The standard to be applied by this court in reviewing awards of attorneys' fees is straightforward: we must determine "whether the district court's findings were clearly erroneous as to the factual basis for the award, or whether it committed abuse as to the discretional margin involved in its allowance." International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255, 1274 (8th Cir. 1980). Accord, Omaha Paper Stock Co. v. Harbor Insurance Co., 596 F.2d 283, 292 (8th Cir. 1979); Grunin v. International House of Pancakes, 513 F.2d 114, 126 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). Although these cases did not involve class actions based on alleged securities violations, the rationale for determining the general rule in the appellate review of an award of attorneys' fees is basically the same. Our review of the arguments, the briefs and the record in this appeal has convinced us that Judge Lord's award of fees was excessive and must be reduced. And although we have carefully considered those of the appellants' arguments which are directed towards the district court's factual findings, we must conclude that the error lies in the abuse of the trial court's discretion in awarding "reasonable" attorneys' fees and expenses.
 
 
 30
 Our task is not simplified by the fact that we sustain most of the district court's findings of fact on appeal. We have examined the record carefully and are basically in accord with Judge Lord's views as to the quality of the work performed by class counsel, the benefits which flowed from their efforts and the risk involved in the undertaking of this litigation. Nevertheless, this court has previously recognized that it is the duty of appellate courts to guard against overgenerosity in the award of attorneys' fees and expenses. International Travel Arrangers, Inc. v. Western Airlines, Inc., supra, 623 F.2d at 1274. See also City of Detroit v. Grinnell Corp., 495 F.2d 448, 469 (2d Cir. 1974) (Grinnell I). And in this particular case, several factors have combined to make the district court's award of fees excessive, unacceptable and an abuse of that court's discretional margin. We shall refer to them separately.
 
 
 31
 BASE FEE OR "LODESTAR"
 
 
 32
 We find that the affidavits and records of the parties support the unchallenged factual findings of the district court as to the number of hours expended by class counsel. However, the hourly rates which were found to be reasonable by the district court are excessive and find no support in the law in this circuit. And when a district court errs as a matter of law in applying improper standards in an award of fees, an abuse of discretion occurs. Merola v. Atlantic Richfield Co., 493 F.2d 292, 295 (3d Cir. 1974) (Merola I).
 
 
 33
 Since the "starting point in determining attorney's fees is to arrive at a 'lodestar' figure by multiplying an hourly rate by the number of hours worked," International Travel Arrangers, Inc. v. Western Airlines, Inc., supra, 623 F.2d at 1274, it is particularly important that those rates which are applied be, in fact, reasonable hourly rates. In Grunin v. International House of Pancakes, supra, 513 F.2d at 127, this court adopted the standards to be considered in calculating attorneys' fees which were previously set forth by the Third Circuit in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167-68 (3d Cir. 1973) (Lindy I), and reiterated in Merola v. Atlantic Richfield Co., supra, 493 F.2d at 297:
 
 
 34
 a) the number of hours spent in various legal activities by the individual attorneys,b) the reasonable hourly rate for the individual attorneys,
 
 
 35
 c) the contingent nature of success, and,
 
 
 36
 d) the quality of the attorneys' work.
 
 
 37
 (Emphasis supplied.) These standards were recently reaffirmed in this circuit in International Travel Arrangers, Inc. v. Western Airlines, Inc., supra, 623 F.2d at 1274.
 
 
 38
 The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." City of Detroit v. Grinnell Corp., supra, 495 F.2d at 471 (Grinnell I). See also Grunin v. International House of Pancakes, supra, 513 F.2d at 127 (citing Grinnell I). In applying this definition to the facts of the present case, Judge Lord drew from his personal knowledge and from the case law in the "area" of "class action securities litigation" to determine that a reasonable hourly rate charged by the attorneys for similar litigation nationally is $125 per hour for senior attorneys and $60 per hour for associates. This resulted in the calculation of rates for some of the attorneys involved in the case at a figure which sometimes doubled their actual, normal hourly rate during the relevant period.
 
 
 39
 We find no authority for such an approach in the case law of this circuit. Since Grunin v. International House of Pancakes, supra, 513 F.2d at 128, attorneys have been required to substantiate their fee claims by providing detailed records "relating to standard hourly rates for himself or his firm" and a "complete breakdown of who spent time in what endeavors." And whether it is more appropriate in each case for a court to base its award on the "normal hourly billing rate" of the individual attorneys involved, Alexander v. National Football League, 1977-2 Trade Cas. P 61,730, (D.Minn.1977), or on the rates charged by attorneys of like skill and for similar work in the general locality in which the litigation takes place, International Travel Arrangers, Inc. v. Western Airlines, Inc., supra, 623 F.2d at 1275; City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1098 (2d Cir. 1977) (Grinnell II), we find that neither method even remotely justifies the hourly rates awarded by the district court in this case. Thus, we hold that the application of "national standards" in this case constituted an abuse of the district court's discretion.
 
 
 40
 Since the determination of the base fee or "lodestar" provides the basis for the calculation of other, more subjective factors which are involved in the final award of "reasonable" fees, we find that the "reasonable" hourly rates to be applied in this case are $80 per hour for senior attorneys and $40 per hour for associates. These rates are much more in line with the actual hourly rates charged by the attorneys involved, as is reflected in Table I. As the Second Circuit pointed out in City of Detroit v. Grinnell Corp., supra, 495 F.2d at 471 (Grinnell I):
 
 
 41
 We are not under the illusion that a "just and adequate" fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.
 
 
 42
 We point out that the $80 rate for senior attorneys is the actual rate charged by many of the senior attorneys as of the date of the filing of the fee application, even though most of the hours were incurred earlier than that, when the actual rates were lower. The $80 rate actually exceeds the rates charged by the remainder of the senior attorneys listed in Table I as of the date of the application.[4] Multiplying these rates by the hours expended by class counsel, we arrive at a reasonable base fee or "lodestar" of $349,804.00 for the work done in pursuit of the Stipulation of Settlement, and $145,124.00 for the hours spent in prosecuting the fee application.
 
 RISK (CONTINGENCY) AND QUALITY
 
 43
 In determining the contingent nature of class counsel's undertaking, Judge Lord followed the standards set forth in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 117 (3d Cir. 1976) (Lindy II), and entered specific findings as to the burdens assumed, the risks involved and the delay in counsel's recovery. The Lindy II standards for the consideration of quality were also considered, and the court entered specific findings as to counsel's performance, the benefits they produced, and their efficiency. 7A Wright & Miller, Federal Practice and Procedure (1979 supp.), § 1803 at 208-210.
 
 
 44
 Although the evidence supports Judge Lord's general findings as to the factors listed above, we hold that his conclusions as to the increases to be awarded are an abuse of the margin of discretion that is permissible in awarding "reasonable" fees. The awards of $800,000 for risk plus $800,000 for quality almost triple the already inflated "lodestar" or base fee, and serve to compound the trial court's abuse of discretion in arriving at that figure. Moreover, the awards of such high "multiples" of the base fee figure represent the sort of overgenerosity which courts of appeals must remedy.
 
 
 45
 The Third Circuit has recognized that the moving party must bear a heavy burden in proving the entitlement to an increase for risk or quality:
 
 
 46
 "Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good." * * * (T)he increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. The heavy burden of proving entitlement to such an adjustment is on the moving party.
 
 
 47
 Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra, 540 F.2d at 118 (Lindy II) (citing Lindy I, supra, 487 F.2d at 168). See also International Travel Arrangers, Inc. v. Western Airlines, Inc., supra, 623 F.2d at 1276 (citing Lindy II). In light of the foregoing, we conclude that a reasonable increase for risk is multiple of .75 and that the same multiple of .75 is reasonable to account for the quality of class counsels' work. This will still result in a fee of $200 per hour for senior partners' presettlement work.
 
 FEE APPLICATION AND EXPENSES
 
 48
 IDS and Trust argue that there should be no award of fees for the hours expended by class counsel in pursuit of the fee application and that if the district court's award is upheld, it should not be increased for risk. We agree in part and disagree in part.
 
 
 49
 We believe that the district court's award of fees for the time incurred in processing the fee application as hereinbefore amended by this court, supra should be upheld. The Third Circuit has recognized that compensation for time necessarily spent in preparing a fee petition is appropriate in cases where attorneys' fees are authorized by statute. The awards are justified in such cases because "the fees are not paid out of the plaintiffs' recovery," and thus do not diminish their benefits. Prandini v. National Tea Co., 585 F.2d 47, 52-53 (3d Cir. 1978). Accord, Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979). We believe that this rationale is applicable to the facts of the present case, where one of the benefits to the plaintiff class is that class counsel's fees are not to be subtracted from the plaintiff class' recovery. Moreover, in justifying their application for fees in this case, class counsel were forced to bear the additional burden of proving the benefits of their efforts to the class members. In light of this additional responsibility, the award of attorneys' fees for the hours spent on the fee application is upheld, as amended.
 
 
 50
 We do not uphold Judge Lord's award of $225,000 as an increase for risk on the fee application, however. Counsel for appellees conceded at oral argument that this increase for risk on the fee application was improper, and in this case, where the Stipulation of Settlement clearly provided for "reasonable" attorneys' fees, there could be no risk to class counsel after the settlement was approved. City of Detroit v. Grinnell Corp., supra, 560 F.2d 1101-1102 (Grinnell II). Accordingly, the award to class counsel of $225,000 for risk in the processing of the fee application was an abuse of the trial court's discretion, and that amount must be subtracted from the final award.
 
 
 51
 Finally, we note that the expenses awarded by the district court are not challenged on appeal. Therefore, the awards for expenses are approved.
 
 IV
 
 52
 In conclusion, we hold that the following award is to be granted:
 
 Attorneys' Fees:
 
 53
 A. Base fee for time spent on merits: $ 849,804.00
B. Increase for risk on the merits: 262,353.00
C. Increase for quality on the merits: 262,353.00
D. Base fee for time spent on
 application: 145,124.00
 -------------
 Total fees: $1,019,634.00
Expenses:
A. Legal assistants and law clerks: $ 4,341.25
B. Expenses incurred on the merits: 56,342.71
C. Expenses incurred on application: 63,798.69
 -------------
 Total expenses: $ 124,482.65
 
 
 54
 We have considered the other arguments raised by the parties and have found them to be without merit. Therefore, the district court's Memorandum Awarding Attorneys' Fees and Expenses of March 12, 1980, and Findings of Fact, Conclusions of Law and Order of Judgment of March 13, 1980, are hereby vacated. The district court is ordered to enter judgment in accordance with this opinion with the appropriate allowance of interest at the rate of seven percent per annum, compounded annually, beginning on September 26, 1978. Each party shall pay its own costs in this appeal and no additional attorneys' fees will be allowed in view of the result.
 
 
 
 [1]
 The Honorable Miles W. Lord, Jr., United States District Judge for the District of Minnesota, presiding
 
 
 [2]
 
 Series Amount Date Offering Commenced
------ ------------ -----------------------
 A $ 25,000,000 October 20, 1972
 B 40,000,000 May 17, 1973
 C 34,940,000 October 11, 1973
 D 50,000,000 February 1, 1974
 E 49,992,000 June 13, 1974
 ------------
TOTAL $199,932,000
 
 
 [3]
 The relevant portion reads as follows:
 Defendants acknowledge that counsel for the Class have produced a benefit for the debentureholders of the Trust and are entitled to an award of some reasonable amount for attorneys' fees and expenses. Such award of attorneys' fees and expenses as is finally determined shall bear interest at the rate of seven percent (7%) per annum, compounded annually, during the period beginning 90 days after the entry of the order (dismissing the action) and ending the date of payment or tender of payment of such fees and expenses. In order to provide for the payment of such attorneys' fees and expenses as may be awarded to counsel for the plaintiff class by the Court, IDS and the Trust will sign a formal undertaking to pay such fees and expenses as are awarded .... Neither the acknowledgment above nor the Undertaking shall prejudice the right of (IDS and the Trust) ... to contest all elements of the attorneys' fees and expenses including the amount of benefit produced for debentureholders of the Trust and without prejudice to the rights of (IDS and the Trust) to seek full appellate review of any award entered by the District Court. App. 1481-82.
 
 
 [4]
 Although the actual hourly rates for the Plunkett firm were lower than the $80 rate awarded to senior attorneys in this lawsuit, the expert testimony relating to rates charged by attorneys of the age, experience and stature of Hugh V. Plunkett, Jr. and Hugh V. Plunkett, III, together with the exhibits introduced at the fee hearing, indicate that the rate of $80 per hour would be reasonable for their services in this litigation in Minneapolis
 The testimony and exhibits entered in connection with the fee application lead us also to conclude that the rates of $80 per hour for senior attorneys and $40 for associates fairly reflect the actual and reasonable hourly rates charged by the members of the Popham firm at the time of this litigation.