Peggy Jo JAQUETTE, Appellant,

v.

BLACK HAWK COUNTY, IOWA; Black Hawk County Department of Health; Geoffrey Marsh, Former Director of Personnel of Black Hawk County, Iowa; Marion Durbala, Chairman of Black Hawk County Department of Health, and as an individual; Rita Burbridge, former Director of Black Hawk County Department of Health, and as an individual, Appellees.

No. 82–1750.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1983.

Decided June 27, 1983.

Reed, Merner, Sabath, Strever, Zanville, Oppold & Hansen by Harry W. Zanville, Cedar Falls, Iowa, Mears, Zimmermann & Mears by Richard H. Zimmermann, Iowa City, Iowa, for appellant.

Peter W. Burk, Asst. Black Hawk County Atty., Waterloo, Iowa, for appellees.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

LAY, Chief Judge.

Peggy Jo Jaquette appeals from the district court's reduced award for attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976 & Supp. V 1981). We affirm the district court's award of attorney fees. However, because we feel the issues have a direct bearing on the overall administration of justice we find it necessary to remand for further proceedings.

Jaquette, a licensed practical nurse, was hired on December 27, 1978, as a probationary employee by the Black Hawk County Department of Health. In 1979, Jaquette joined a group of fellow professional non-management employees ("Employees' Coalition") in its private and public criticism of the operation of the Department of Health and its supervision by the Black Hawk County Board of Health and Board of Supervisors. Subsequently, when her probationary term expired, the Department of Health terminated Jaquette's employment. Jaquette's employee review form noted that "[w]hile employed here under probationary status, Peggy has failed to bring obvious concerns regarding her job and the clinic to her immediate supervisor or department head through proper channels." The review form also stated Jaquette caused "unnecessary interpersonal problems which interfere with accomplishing work objectives."

On July 16, 1979, Jaquette brought suit under 42 U.S.C. § 1983 (1976) in the United States District Court for the Northern District of Iowa, alleging that the Department of Health, its director, and its acting chairman had violated Jaquette's first and fourteenth amendment rights by terminating her employment without notice and a hearing and because of her involvement with the Employee's Coalition. Thereafter, the case spanned two years, eight and one-half months from the date suit was filed until it was ultimately settled by the parties. The litigation encompassed numerous claims by the plaintiff, affirmative defenses and counterclaims by the defendants, a motion by Jaquette to depose the defendants' counsel, motions to compel discovery by both sides, motions for summary judgment by both sides, and a motion by defendants for sanctions against the plaintiff for the loss by the plaintiff's attorneys of tapes and documents produced by the defendants. This in-court activity was complemented by public media coverage both of the dispute between the Department of Health and its employees, and of the plaintiff's request for attorney fees, and by the departure of three of the defendants—Burbridge, Marsh, and Durbala—from the positions they occupied with the county at the beginning of the suit.

Three years after Jaquette's employment was terminated, shortly before her case was scheduled to go to trial, the parties settled their dispute and the district court dismissed the case. As a result of the settlement, Jaquette was paid $1,500, her employment records with the Department of

Health were to be purged of "all adverse references, notations, or comments of any sort" relating to the dispute, and the defendants and their employees agreed not to advise any person or entity of any adverse matters which formed the basis of Jaquette's claims. The defendants expressly denied any wrongdoing in the matter. The parties also stipulated that Jaquette was the "prevailing party" for purposes of an award of attorney fees under 42 U.S.C. § 1988; the amount of attorney fees to be awarded to Jaquette was to be determined by the district court.

The settlement was considerably less than the relief Jaquette had requested in her petition. She had requested reinstatement as a permanent (not probationary) employee, back pay, all benefits and incidents of seniority, expunction from her employment records of all adverse references to the dispute, and $75,000 in compensatory and punitive damages. However, according to the plaintiff, the settlement she eventually received was identical to her original offer to settle that she made to the defendants three years earlier, before the lawsuit was filed. Jaquette's attorney stated in an affidavit that his attempts to settle the lawsuit were rebuffed consistently by the defendants until shortly before settlement.

Thereafter, Jaquette requested an award of attorney fees under 42 U.S.C. § 1988.[1] Her three attorneys submitted a total number of 1,034.45 hours, and requested a "lodestar" figure[2] of $73,014.75. Jaquette requested that the lodestar figure be increased by a "risk-contingency factor" of 20% to 30%, for a total fee award of $91,710.98. Jaquette's attorneys requested an additional $1,000 for time spent in the preparation of the fee request, and $3,711.51 for costs advanced. The total request was for an award of $96,422.49.[3]

The district court awarded the plaintiff $20,437.00 in attorney fees, and expenses of $2,315.14. The court noted that it followed the guidelines established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Eighth Circuit, *e.g., Ladies Center, Nebraska, Inc. v. Thone*, 645 F.2d 645, 647 (8th Cir.1981). The district court reduced the requested award because (1) an excessive number of hours was claimed;[4] (2) the use of a risk-contingency

1. That statute provides in pertinent part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 42 U.S.C. § 1988.

2. *See, e.g., Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312–14 (8th Cir.1981).

3. The request for fees was allocated among the three attorneys as follows:

 Harry W. Zanville

 | Lodestar | | |
 |---|---|---|
 | 651.85 hours X $75.00 per hour | = | $48,888.75 |
 | Risk-contingency factors | | |
 | Risk of litigation ........ 10% | | |
 | Delay in payment for | | |
 | protracted litigation ... 10% | | |
 | Preclusion of other | | |
 | employment and damage | | |
 | to employment in handling | | |
 | controversial case ..... 10% | | |
 | 30% | = | $14,666.63 |
 | TOTAL | | $63,555.38 |

 Richard H. Zimmerman

 | Lodestar | | |
 |---|---|---|
 | 335.8 hours X $60.00 per hour | = | $20,148.00 |
 | Risk-contingency factors | | |
 | Risk of litigation ........ 10% | | |
 | Delay in payment for | | |
 | protracted litigation ... 10% | | |
 | 20% | = | $ 4,029.60 |
 | TOTAL | | $24,177.60 |

 John W. Sabbath

 | Lodestar | | |
 |---|---|---|
 | 46.8 hours X $85.00 per hour | = | $3,978.00 |

4. The court held that the number of hours claimed not only constituted a certain amount of duplication of effort by the three attorneys, but also involved an inordinate amount of time spent on legal research (265 hours—reduced by 50%) and on final trial preparation (79 hours—reduced by 25%). The district court also held that 147 hours claimed for the preparation of a motion for partial summary judgment was clearly excessive, and reduced the award to 47 hours.

multiplier was not appropriate in this case;[5] (3) the conduct of the plaintiff's attorneys warranted a reduction in the amount of the award;[6] and (4) the limited results achieved by the plaintiff justified a reduction in the award.[7] Jaquette now appeals the reduction of her requested award.

The "American Rule" has long been that each party to a dispute is responsible for its own attorney fees.[8] However, several statutory exceptions to the rule exist.[9]

In 1976 Congress enacted the Civil Rights Attorney's Fees Awards Act, amending 42 U.S.C. § 1988, to allow a prevailing party to recover attorney fees in an action or proceeding brought to enforce the provisions of 42 U.S.C. § 1983, among other statutes.[10] The amendment was enacted to encourage plaintiffs, acting as "private attorneys general," to sue to enforce important public policies and rights embodied in our civil rights laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 2–3, 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5910, 5912 (footnote omitted).

This court has in the past emphasized the need for district courts and courts of appeals to make certain that counsel is adequately compensated for the time expended in vindicating the civil and constitutional rights of a party. *Greminger v. Seaborne,*

584 F.2d 275, 279 (8th Cir.1978); *Pickett v. Milam,* 579 F.2d 1118, 1121 (8th Cir.1978); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 884 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977); *Firefighters Institute for Racial Equality v. St. Louis,* 549 F.2d 506, 516 (8th Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977). One concern in such cases is that a plaintiff's counsel should not be denied a reasonable fee for time expended simply because the amount of the award is not great. *Jones v. MacMillan Bloedel Containers, Inc.,* 685 F.2d 236, 238–39 (8th Cir.1982); *Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279, 1282 (8th Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *Brown v. Bathke,* 588 F.2d 634, 637 (8th Cir.1978). It also should be obvious counsel should not have his award reduced simply because he is attempting to vindicate a person's civil rights. Fees for counsel in litigating civil rights of an injured plaintiff should be commensurate with reasonable charges of fees the attorney would charge in private litigation. However, Judge Arnold recently observed that we are not required:

[T]o compute fees mechanically and without question on the basis of the hourly fee that a lawyer regularly charges in fact. It remains our duty to fix a fee

---

5. The district court held that the plaintiff had not satisfied the "heavy burden in proving entitlement to such an increase," at least in part because the court felt that the delay involved in settling this lawsuit was attributable partly to the plaintiff's attorneys.

6. The district court noted that the plaintiff's attorneys filed an amended complaint which contained additional claims that "were of marginal merit and bordered on the frivolous." The district court also observed that on two occasions it had to order the plaintiff's attorneys to provide more complete answers to the same set of interrogatories. In addition, the plaintiff's attorneys lost evidence that the court had ordered the defendants to produce over the defendants' strenuous objections.

7. Because of this last factor the district court imposed an additional 50% reduction. The court noted:

[A]s the result of this lawsuit, which has been in existence for almost three years, plaintiff obtained $1,500.00 and the purging

of her extremely short employment record with the County Health Department. Certainly, her individual first amendment rights were at least arguably vindicated. However, the disposition of her dispute provides no precedential value for others similarly situated, nor is anyone else benefitted by the disposition of her claims.

We view the district court's analysis to be within substantial accord with the recent decision of the Supreme Court in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

8. *E.g., Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

9. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910; *see also* E. Larson, *Federal Court Awards of Attorney's Fees* app. C, at 323 (1981).

10. See note 1 *supra.*

that is reasonable and, as part of that process, to determine a reasonable hourly rate. Automatic acceptance of a lawyer's customary charge would be an abdication of our duty to supervise the conduct of the bar and do justice to the losing as well as to the winning side. "This court does not accept the attorneys' usual billing rate as definitively fixing their billing rates for this litigation." *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 684 (N.D.Cal. 1974), *aff'd,* 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds,* 436 U.S. 547 [98 S.Ct. 1970, 56 L.Ed.2d 525] (1978). As we said in *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1312 (8th Cir.1981), "it is particularly important that those rates which are applied be, in fact, reasonable hourly rates."

*Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140 (8th Cir.1982) (footnotes omitted).

In *Avalon* we reduced the requested hourly rate of one attorney from $170.00 to $100.00 and from $190.00 to $110.00. In doing so we emphasized:

> In general, a reasonable hourly rate would be the ordinary fee "for similar work in the community," *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 718. "The term 'reasonable hourly rate' has been defined as the 'hourly amount to which attorneys *in the area* would typically be entitled for a given type of work on the basis of an hourly rate of compensation' " *Jorstad v. IDS Realty Trust, supra,* 643 F.2d at 1313, quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir.1974) (emphasis ours).

689 F.2d at 140.

We also noted in *Avalon:*

> But our task is to fix a reasonable fee and, in doing so, to be mindful of Congress's purpose to encourage the enforcement of constitutional rights by awarding "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S.Rep. No. 94–1011, *supra,* at 6.

689 F.2d at 141.

Ordinarily the requested "lodestar" figure should be approved on the basis of the actual expenditure of the hours multiplied by the reasonable hourly rate prevailing. As we have discussed, under the standards of *Johnson* the lodestar based upon the time and labor involved may be reasonably increased by various factors, including:

> (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee [for similar work in the community], (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092 (5th Cir.1982), *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19.

As we have indicated in *Avalon,* however, this does not mean that a court may not award an amount less than the lodestar. As the Fifth Circuit recently recognized, the lodestar may be reduced "if there are articulable reasons for that action." *Copper Liquor,* 684 F.2d at 1097. As the court reasoned:

> Thus, if the case is solely of private interest and involves only money damages, the fee might be egregiously disproportionate to the amount involved. Or the trial judge might decide that counsel had shown demonstrably poor judgment in pursuing too zealously a claim that did not warrant such intensive effort. Other unusual circumstances may likewise warrant a reduction.

*Id.* (footnote omitted).

The trial judge reduced the requested attorney fees in this case because he found that the hours claimed were "excessive," spent on issues of "marginal merit," and that the plaintiff's attorneys were guilty of "misconduct" in conducting the litigation.

It is difficult for us to definitely assess the trial court's appraisal. This could mean that the hours claimed were not actually spent (a serious charge), or that the hours that were spent were not reasonably necessary to the litigation involved. The difficulty with the second appraisal is that a judge is seldom able to make adequate appraisal of what is necessary for counsel to do or not do in a given case. This appraisal turns on so many subjective factors that it seldom should be the basis for reduction of an attorney fee. In private litigation counsel naturally must decide whether the cost of his services are commensurate with the result the client wishes to achieve, that is, whether the economic interests he wishes to protect justify the expenditure. For example, common sense dictates that in a property damage suit few clients would find it reasonable to expend $100,000 to achieve a recovery of money damages not to exceed $1,500. At the same time it is difficult to place a pecuniary value on relief sought when the injury involves the infringement of the civil or constitutional rights of a plaintiff. Nonetheless, in private litigation counsel must not only equate reasonableness in terms of what is reasonable to the client, but also the reality of self-survival requires counsel to appraise his product (time) in terms of economic cost factors. A lawyer who works on a contingent fee basis must not only appraise the chances of winning or losing, but must as well within

ethical bounds of self-interest determine whether the desired result can justify the required expenditure of time. For example, it would be difficult for counsel to justify the expenditure of 1,000 hours of time, considering the cost factors involved in overhead, the loss of time in services to others, and a margin for personal return, when the optimum fee involved under a contingent fee contract was one-third of a possible recovery for the client of $1,500. Where there is more than just a money award involved, the lawyer is still concerned with the willingness of the client to pay to achieve the projected result.

These same market-place factors are often absent from civil rights litigation. There is, of course, a contingency risk factor for a plaintiff's counsel; that is, if a plaintiff is not a "prevailing party," as now so defined,[11] counsel may not seek attorney fees under the Act. To this extent, effective appraisal of winning or losing must certainly enter not only into counsel's decision whether to accept the case, but as a practical matter in the expenditure of only a reasonable number of hours as well. The latter factor must be considered, since counsel fully realizes that the approval of the requested attorney fee is within the court's sound discretion and as such will only be approved upon demonstration of reasonableness under the circumstances.

---

**11.** *E.g., Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (awards of counsel fees *pendente lite* allowable only when party has prevailed on merits of at least some of his claims; only in that event has there been a determination of the "substantial rights of the parties," which Congress held was a necessary element for departing from the rule that each party is responsible for its own attorney fees); *Taylor v. Sterrett,* 640 F.2d 663, 669 (5th Cir.1981) (the proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought); *Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981) (the test of whether a person is a prevailing party is whether he essentially succeeds in obtaining the relief he seeks in his claims on the merits; when there is more than one cause for the

defendant's action, the plaintiff is a prevailing party if his lawsuit was a material factor in bringing about the defendant's action—the lawsuit need not be the sole cause); *Chicano Police Officer's Ass'n v. Stover,* 624 F.2d 127, 131 (10th Cir.1980) (plaintiff is a prevailing party if the basic objectives plaintiff sought from the lawsuit were achieved or furthered in a significant way, and plaintiff's conduct, as a practical matter, played a significant role in achieving the objective); *United Handicapped Federation v. Andre,* 622 F.2d 342, 345–46 (8th Cir.1980) (prevailing party's suit must be linked causally to results achieved, and defendant's conduct must be required by law); *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978) (plaintiff is a prevailing party if he succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit).

With this discussion in mind, we again return to Judge McManus's assessment of the plaintiff's requested attorney fees as excessive. The trial judge is in a much better position to make this appraisal than we are, and in this case we cannot say his evaluation is wrong.[12] *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In fact, this court cannot understand, in the absence of a finding of bad faith, misconduct, or serious neglect by one or more of the parties or its attorney, how this case could remain in district court for almost three years, and generate such an astounding expenditure of legal time.[13]

We note that this is a private interest case. The result does not benefit anyone other than the plaintiff. Although there are first amendment rights involved which are difficult to evaluate in monetary terms, we note the fee requested is egregiously disproportionate to the settlement obtained. This does not mean that a modest damage award or settlement should dictate the size of the attorney fee, but at the same time it cannot be ignored. We cannot help but note that the result achieved is far less than the remedy sought in the plaintiff's complaint. Although the result achieved is identical to Jaquette's pre-suit offer of settlement, and the defendants by stipulation conceded that the plaintiff is the prevailing party, the consideration of remedy sought before suit was filed and remedy obtained after almost three years of pretrial skirmishes demonstrates with some degree of objectivity the limitation of recovery reasonably anticipated by counsel for both sides when the suit was commenced.

We do not in any way diminish the importance of the plaintiff's counsel's work in the vindication of the plaintiff's first amendment rights. Obviously an award of fees in excess of $20,000 represents an amount greater than 13 times the money award Jaquette received. This represents 40 times the amount an attorney would receive on a one-third contingent fee basis. It is clear the district court has given substantial recognition to the time expended to vindicate the plaintiff's first amendment rights.

We therefore affirm the district court's reduction of Jaquette's award. However, because of the unusual circumstances of this case, we feel further discussion is warranted. We find that because of the excessive number of hours expended and the district court's assessment of them, a remand is necessary.

As indicated, we are unable to determine the reasons for the excess expenditure of time by Jaquette's counsel. It is conceivable such time was spent in good faith by the plaintiff's counsel in acquiring an education in civil rights litigation (the expenditure of 265 hours on legal research in a case with noncomplex issues may well account for this). Such time may be attributable simply to the exercise of poor judgment in overzealously pursuing the claim. If so, counsel cannot be said to have acted in bad faith. Similarly, the plaintiff's counsel would be acting in good faith if they spent many hours on matters caused directly by defense counsel; such expenditure would be in good faith and compensation should be awarded accordingly.[14] On the other hand, if the hours expended were spent on frivolous claims, unnecessary and extended discovery, unnecessary and extended motion practice, or were expended vindictively and in bad faith harassment of defendants, then the district court should so state and a finding of bad faith would be warranted.

12. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717 ("The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities"). *See also Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1274 (8th Cir.1981); *Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d at 648; *Brown v. Bathke,* 588 F.2d at 638.

13. Although not before us, we note that the defense counsel (an assistant county attorney) in oral argument estimated that the defendants paid private counsel fees in excess of $35,000.

14. If this is determined then the court should reasonably increase the amount of the lodestar figure.

A court possesses several well-acknowledged inherent and statutory powers to levy sanctions against parties and their attorneys for abusive litigation practices. In *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), the Court upheld the dismissal with prejudice of the plaintiff's action for failure to prosecute. *See also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). A dismissal with prejudice or a default judgment may in some cases be a harsh sanction, particularly when the sanction is levied in response to the actions or omissions of counsel, and is not attributable to the party himself.[15] But a court also possesses other, perhaps more narrowly tailored powers to deter abuses of the litigation process.

█ A court has the inherent authority to assess attorney fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 691, 98 S.Ct. 2565, 2573 n. 14, 2574, 57 L.Ed.2d 522 (1978); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. at 258–59, 95 S.Ct. at 1622; *Vaughan v. Atkinson,* 369 U.S. 527, 530–31, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962); *Doe v. Poelker,* 515 F.2d 541, 547 (8th Cir.1975), *rev'd on other grounds,* 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977); *Class v. Norton,* 505 F.2d 123, 127 (2d Cir.1974).

Excess costs and attorney fees may also be assessed against an attorney personally. "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (footnote omitted). In addition, under 28 U.S.C. § 1927 (1976 & Supp. V 1981), a court may assess excess costs, expenses, and attorney fees reasonably incurred because of the actions of "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously...." *Id.*[16]

If bad faith is involved in this case by either party, plaintiff or defendant, or by their respective counsel, then the court should consider the imposition of sanctions such as those discussed above. *Roadway Express, Inc. v. Piper,* 447 U.S. at 763–67, 100 S.Ct. at 2462–64. We therefore remand to the district court to hold an evidentiary hearing; the burden shall be on the plaintiff's counsel to explain the reasons for expenditure of the excessive number of hours as found by the trial court. The court shall certify within 60 days of the filing of this opinion its findings to this court. If any party feels aggrieved by these findings, it may be given sufficient time to file appropriate objections before final judgment in this appeal has been entered.

We add an addendum. In doing so, we intend no criticism of the district court. This case, although not unusual on its facts, exemplifies not only society's concern, but the profession's acknowledgment that there exists excessive cost and delay in litiga-

---

15. See Justice Black's dissent in *Link,* 370 U.S. at 645–48, 82 S.Ct. at 1396–98.

16. Several courts have construed the standards established by section 1927. *E.g., United States v. Ross,* 535 F.2d 346, 349 (6th Cir.1976) ("an intentional departure from proper conduct, or, at a minimum, ... a reckless disregard of the duty owed by counsel to the court"); *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) ("a clear showing of bad faith"); *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct.

1750, 23 L.Ed.2d 221 (1969) ("a serious and studied disregard for the orderly processes of justice"; "intentional ... acts of misconduct ... involving serious breaches of the Canons of Ethics"); *see also Fisher v. Fashion Institute of Technology,* 491 F.Supp. 879, 890 (S.D.N.Y. 1980); *North American Foreign Trading Corp. v. Zale Corp.,* 83 F.R.D. 293, 296–97 (S.D.N.Y. 1979).

This is not intended to be an exhaustive list of sanctions for abuse of the processes of the courts. *See, e.g.,* Fed.R.Civ.P. 1, 11, 26, 30(g), 37, 41(b)–(d), 45(f), 55, and 56(g).

tion.[17] The direct effect is the denial of reasonable access to justice in our courts. The entire administration of justice is involved. The searching question is why. Assuming counsel for each side acted in good faith, and we have no reason at this stage to suggest otherwise, nonetheless the time, expense and delay involved in the litigation of a relatively simple claim demands full judicial attention. The Attorney's Fees Awards Act should not serve as a vehicle to charge exorbitant fees and such excessive fees should not act to chill good faith defenses to claims brought under the Civil Rights Act.[18]

In almost all cases the key to avoiding excessive costs and delay is early and stringent judicial management of the case. Sending counsel off into extended "paper chases" in compliance with pretrial orders has now been demonstrated not to be the answer. *See* Peckham, *The Federal Judge as a Case Manager: The New Role in Guiding a Case from Filing to Disposition,* 69 Calif.L.Rev. 770 (1981); Pollack, *Pretrial Procedures More Effectively Handled,* 65 F.R.D. 475 (1975); Solomon, *Techniques for Shortening Trials,* 65 F.R.D. 485 (1975); Will, *Judicial Responsibility for the Disposition of Litigation,* 75 F.R.D. 117 (1978).

The recognition of early judicial management, not by the clerk, not by the magistrate, but by the trial judge before whom the case will be tried is essential. Management conferences at the pleading stage, which simplify the extent of discovery as well as the issues involved, have proven successful. The newly adopted Federal Rule of Civil Procedure 16(b) contemplates such a practice.[19] We request each district judge to re-evaluate local rules with the view toward early case management. With such management procedure, we are confident that litigation such as this, extending almost three years in the district court, would be avoided. Excessive costs of litigation is as much the court's concern as it is of counsel and litigants. We fully recognize district judges are busy people; it has been argued that they do not have time for pretrial skirmishes because they are too busy in the "adjudication" of cases (that is, the trial itself). However, it is time to recognize that the adjudication process begins at the time of the filing of the complaint and carries through to the last appeal. Lack of proper judicial supervision in the pretrial stage leads to excessive discovery, the development of complex and multiple issues, extended motion practice, and long and ex-

**17.** *E.G.,* Hufstedler & Nejelski, *ABA Action Commission Challenges Litigation Cost and Delay,* 66 A.B.A.J. 965 (1980); Janofsky, *Facing the Crises of Court Costs and Delay,* 7 B. Leader, Jan.-Feb. 1982, at 22; Williams, *Court Delays and the High Cost of Civil Litigation: Causes, Alternatives, Solutions,* 71 Ill.B.J., Oct. 1982, at 84. *See* Justice Powell's dissent from the 1980 amendments to the Federal Rules of Civil Procedure, on the ground that "the changes embodied in the amendments fall short of those needed to accomplish reforms in civil litigation that are long overdue," at 85 F.R.D. 521 (1980).

**18.** *See Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861, 871 (8th Cir. 1977).

**19.** The new rule provides:

(b) SCHEDULING AND PLANNING. Except in categories of actions exempted by district court rule as inappropriate, the judge, or a magistrate when authorized by district court rule, shall, after consulting with the attorneys for the parties and any unrepre-

sented parties, by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order that limits the time

(1) to join other parties and to amend the pleadings;

(2) to file and hear motions; and

(3) to complete discovery.

The scheduling order also may include

(4) the date or dates for conferences before trial, a final pretrial conference, and trial; and

(5) any other matters appropriate in the circumstances of the case.

The order shall issue as soon as practicable but in no event more than 120 days after filing of the complaint. A schedule shall not be modified except by leave of the judge or a magistrate when authorized by district court rule upon a showing of good cause.

Fed.R.Civ.P. 16(b) (effective date Aug. 1, 1983), *reprinted at* 51 U.S.L.W. 4502 (May 3, 1983). *See also* Fed.R.Civ.P. 26(f), added by amendment in 1980, authorizing pre-trial discovery conferences between counsel and the court. *See also* Sherman & Kinnard, *Federal Court Discovery in the 80's—Making the Rules Work,* 95 F.R.D. 245, 269–83 (1983).

pensive trials. Conversely, time expended wisely by counsel and the district judge at the early stages will save many hours of unnecessary labor later in the process. We suggest that under the newly amended rules of civil procedure requiring early judicial supervision and management, the present litigation could have been resolved within six to nine months. The litigation should have terminated long before the plaintiff's counsel could have expended 1,000 hours. Early and ongoing judicial management is essential if the judicial process is to survive. It is now obvious that adversarial lawyers are unable to achieve proper management alone. This new procedure may necessitate changes in the practice of many judges and attorneys, but unless we are willing to innovate and break away from our present conduct, excess costs and delays will geometrically multiply, and the result will be the denial of justice in our courts.

The cause is remanded for further consideration.

BRIGHT, Circuit Judge, concurring and dissenting.

I concur in the court's affirmance of the district court's award of Jaquette's attorneys fees. I would not, however, remand the case to the district court. This case has already consumed an inordinate amount of judicial, as well as lawyers', time and effort. Simply stated, it is time to lay this case to rest.

The record in this case does not reflect favorably on the counsel for the litigants. As the majority notes, pretrial skirmishing spanned nearly three years. Finally, shortly before trial, the parties reached a settlement, under which Jaquette received $1,500, the expunction of her employment record, and the designation as a "prevailing party" for purposes of assessing attorneys' fees. Jaquette's attorneys requested fees and costs totalling $96,422.49, and the district court awarded her $22,752.14. At oral argument, counsel for Black Hawk County

estimated lawyers retained by the individual defendants ultimately cost the county approximately $35,000. This figure did not include the considerable time and effort the Black Hawk County Attorney's office spent on the case.

After reviewing the record, it is evident that this case did not require such enormous expenditures of time and money. I do not denegrate in any way the importance of the relief Jaquette obtained. However, it is unconscionable that this case dragged on for nearly three years before the parties reached an agreement which, according to Jaquette, would have been acceptable at the very beginning of the litigation. The responsibility for this extensive legal imbroglio may well rest on some or all counsel. In any event, the cost of litigation seems to have been astronomic in comparison to the monetary financial wrong done to Jaquette.

Although I share the majority's outrage regarding the inexcusable amounts of time and money expended on this case, I dissent from that portion of the majority's opinion remanding the case to the district court. After what is now nearly four years of the litigants exchanging charges and counter-charges, I can see no possible benefit of further prolonging this case. Unfortunately, nothing this court does can alter the fact that the real losers in this case are the taxpayers who have had to pay the ultimate cost of this litigation. This case emphasizes to judges and attorneys alike the need to find ways to stem the inordinately high cost of litigation in cases like Jaquette's.