**AVALON CINEMA CORPORATION,**
Appellant,

v.

**Reed W. THOMPSON, individually and in his official capacity as Mayor of the City of North Little Rock, Arkansas, et al., Appellees.**

No. 81–1162.

United States Court of Appeals, Eighth Circuit.

Submitted May 24, 1982.

Decided Sept. 3, 1982.

As Modified on Denial of Rehearing and Rehearing En Banc Oct. 19, 1982.

John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal. (David M. Brown, G. Randall Garrou, Brown, Weston & Sarno, Beverly Hills, Cal., John Wesley Hall, Jr., Little Rock, Ark., on the brief), for appellant.

Jim Hamilton, City Atty., North Little Rock, Ark., for appellees.

Before LAY, Chief Judge, HEANEY, BRIGHT and ROSS, Circuit Judges, STEPHENSON, Senior Circuit Judge, HENLEY,[*] McMILLIAN, ARNOLD, and JOHN R. GIBSON,[**] Circuit Judges, *en banc.*

ARNOLD, Circuit Judge.

In *Avalon Cinema Corp. v. Thompson*, 667 F.2d 659 (8th Cir. 1981) (en banc), we held that a zoning ordinance of the City of North Little Rock, Arkansas, as applied to plaintiff's proposed "adult" movie house, violated the First Amendment of the Constitution of the United States, as applied to the states and their instrumentalities by the Fourteenth Amendment. We directed plaintiff, as the prevailing party, to submit affidavits and other materials in support of its request for an allowance of attorneys' fees and costs under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. It has done so, and the appellees, whom we shall call "the City," have responded. The question before us is the appropriate amount of fees and costs allowable for services rendered by plaintiff's lawyers in this Court. It will be for the District Court, on remand, to fix the proper compensation for services rendered before it.

### I.

Plaintiff's position is in some respects not contested by the City. We will confine this opinion to the issues in material dispute.

Plaintiff asks us to award a total of $29,702.07 in fees and expenses. Compensation is sought for the services of John Wesley Hall, Jr., of North Little Rock, and for the services of John H. Weston, David M. Brown, G. Randall Garrou, Robert A. DePiano, and Tina Erlbaum of Brown, Weston & Sarno, of Beverly Hills, California, and Houston, Texas. The amounts requested can be tabulated as follows:

For John Wesley Hall, Jr.,

| | | |
|---|---|---|
| 10.05 hours at $70.00 per hour | = | $ 703.50 |
| 12.6 hours at $75.00 per hour [1] | = | 945.00 |
| Total fees | | $ 1,648.50 |

For John H. Weston,

| | | |
|---|---|---|
| 87.7 hours in 1981 at $170.00 | = | $14,909.00 |
| 6.8 hours in 1982 at $190.00 | = | 1,292.00 |
| | | $16,201.00 |

For David M. Brown,

| | | |
|---|---|---|
| 11.4 hours in 1981 at $170.00 | = | $ 1,938.00 |

For G. Randall Garrou,

| | | |
|---|---|---|
| 15.3 hours in 1981 at $125.00 | = | $ 1,912.50 |

For Robert A. DePiano,

| | | |
|---|---|---|
| 16.1 hours in 1981 at $85.00 | = | $ 1,368.50 |
| 6.5 hours in 1982 at $85.00 [2] | = | 552.50 |
| 14.3 hours in 1982 at $95.00 | = | 1,358.50 |
| | | $ 3,279.50 |

For Tina Erlbaum,

| | | |
|---|---|---|
| 29.3 hours in 1981 at $60.00 | = | $ 1,758.00 |

Total fees for Brown, Weston, & Sarno $26,737.50

---

[*] Judge Henley became a Senior United States Circuit Judge on June 1, 1982.

[**] Judge John R. Gibson was not a Member of the Court on December 11, 1981, when the merits of this case were decided, but he did become a Member of the Court on March 30, 1982, before plaintiff's initial submission of its material in support of an allowance of attorneys' fees and costs.

1. Mr. Hall's affidavit states that his customary hourly rate went up to $75.00 on October 1, 1981.

2. Although Mr. DePiano's affidavit states that his customary hourly rate increased from $85 to $95 in 1982, he asks the higher rate for only 14.3 of his 20.8 1982 hours.

In addition, expenses are requested in the total sum of $2,964.57, $117.47 of which seems to have been paid by Mr. Hall, and $2,847.10 by Brown, Weston & Sarno.

Counsel's fee request is for payment at the regular hourly rate of the various lawyers, set out above, for the number of hours actually worked, all of which are described in copious detail in affidavits filed with us. No request is made that the fee be enhanced, or any multiplier applied, because of the extraordinary nature of the case. The City does not question that the hours claimed were actually spent on the case. It raises three main objections to plaintiff's request: (1) that there is "a certain amount of duplication of effort and inefficiency"[3] in the work of plaintiff's counsel; (2) that 2.9 hours spent by Mr. Weston on plaintiff-appellant's successful petition for rehearing en banc should be disallowed; and (3) that the hourly rates requested for Mr. Weston and the other California lawyers are excessive. We address these contentions in turn.

## II.

### A.

■ We have examined the affidavits and briefs of counsel in light of our familiarity with this appeal, which was heard and decided first by a panel of three judges and later by the Court en banc. We find no duplication or inefficiency on the part of plaintiff's lawyers. The case was argued twice and is an important one, as shown by this Court's decision to grant rehearing en banc, a rare procedure. It is not unreasonable for more than one lawyer or law firm to appear in such a case. Mr. Hall's services were predominantly performed as local counsel and were considerably less extensive than those of Mr. Weston's firm. The various lawyers in Brown, Weston and Sar-

no who worked on the case divided their time appropriately among research, drafting, supervision, preparation for argument, and argument in open court. We decline to disallow any of the claimed hours on the ground of duplication.

### B.

■ The City next specifically objects to 2.9 of Mr. Weston's hours. The Weston affidavit shows one hour for drafting a motion for leave to file a petition for rehearing en banc longer than the normal 15 pages, and 1.9 hours for drafting a motion for leave to make a correction in the previously filed petition for rehearing en banc. We agree that the City should not have to pay for this time. The rules provide for motions for leave to file over-length papers, and we granted plaintiff's motion, displaying, perhaps, too much indulgence. But the extra pages added nothing essential, and we decline to impose their cost on defendants. Time spent correcting a mistake should likewise not be taxed against the adverse party, which had nothing to do with the error. The 2.9 hours will be disallowed.

### C.

The computation of allowable attorneys' fees under 42 U.S.C. § 1988[4] is governed by familiar principles. Typically, a court will first multiply the number of hours reasonably expended times the lawyer's regular hourly rate. The product of these two numbers becomes a basic or "lodestar" figure that is normally a floor below which fee awards do not go. See, *e.g., Crain v. City of Mountain Home*, 611 F.2d 726 (8th Cir. 1979); *Zoll v. Eastern Allamakee Community School Dist.*, 588 F.2d 246, 252 (8th Cir. 1978). The court will then consider other relevant factors, a list of which appears in

---

3. Appellees' Response, p. 8.

4. It is worth recalling that Congress, not the courts, has made the decision to impose lawyers' fees on the losing side in civil-rights and other limited types of cases. The so-called American rule, which was judge-made law, left the burden of litigation unshifted: each side paid its own lawyers. Section 1988, enacted in 1976, is a statutory exception to the American rule. The people's elected representatives in Congress evidently felt that those who violate constitutional rights should pay for the legal services required to redress the violation. Our task as judges is to carry out this legislative command.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), cited with approval in *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). If these factors lead the court to change the basic or lodestar figure, usually (but not always) the change will be an increase. A court also has discretion to enhance a fee because of the public importance or other extraordinary feature of a case. See, *e.g., Taylor v. Jones,* 653 F.2d 1193, 1206 (8th Cir. 1981) (20% enhancement approved).

In the instant case our task is considerably simplified by the large measure of agreement between the parties. The City does not question Mr. Hall's hourly rates. Plaintiff does not ask for the use of a multiplier, nor that the fee be increased above the lodestar figure by reason of any of the *Johnson* factors. The City does not suggest that the *Johnson* factors should cause a decrease in the fee. The City does claim, however, that the hourly rates sought by Mr. Weston ($170 in 1981, $190 in 1982) and his partners or associates are excessive. In large part, we agree.

Plaintiff stresses the language of *Zoll v. Eastern Allamakee Community School Dist., supra,* 588 F.2d at 252, that the "minimum award should generally be not less than the number of hours claimed times the attorney's *regular hourly rate.*" (Emphasis supplied.) We do not read this phrase to require us to compute fees mechanically and without question on the basis of the hourly fee that a lawyer regularly charges in fact. It remains our duty to fix a fee

that is reasonable and, as part of that process, to determine a reasonable hourly rate. Automatic acceptance of a lawyer's customary charge would be an abdication of our duty to supervise the conduct of the bar and do justice to the losing as well as to the winning side. "This court does not accept the attorneys' usual billing rate as definitively fixing their billing rates for this litigation." *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd,* 550 F.2d 464 (9th Cir. 1977), *rev'd on other grounds,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).[5] As we said in *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1312 (8th Cir. 1981), "it is particularly important that those rates which are applied be, in fact, reasonable hourly rates." [6]

■ In general, a reasonable hourly rate would be the ordinary fee "for similar work in the community," *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 718. "The term 'reasonable hourly rate' has been defined as the 'hourly amount to which attorneys *in the area* would typically be entitled for a given type of work on the basis of an hourly rate of compensation'" *Jorstad v. IDS Realty Trust, supra,* 643 F.2d at 1313, quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974) (emphasis ours). This does not mean that out-of-town counsel must always be limited to lower local rates. It may not always be possible to find counsel in or near the locality of the case who are able and willing to undertake difficult and controversial civil-rights litigation. If "a plaintiff can show he has been unable through diligent, good faith efforts to retain local counsel, attor-

---

5. We cite the district court opinion in *Stanford Daily* for two reasons. First, it is reasonable and persuasive. Second, it is one of four cases cited by the Senate Report on the bill that became § 1988: "The appropriate standards, see *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974) . . . ." S.Rep.No.94–1011, 94th Cong., 2d Sess. 6 (1976). *Accord,* Larson, *Federal Court Awards of Attorney's Fees* 191 (1981): "Determining the appropriate hourly rates to be applied in calculating court-awarded fees is not necessarily a straightfor-

ward, mechanical task, even with regard to a private practitioner who has regular noncontingency billing rates, for, in the final analysis, the rates must be reasonable."

6. *Jorstad* was a securities case, not a civil-rights case, but its holding is relevant here because Congress "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . . ." S.Rep.No.94–1011, *supra* n.5, at 6, U.S.Code Cong. & Admin. News 1976, p. 5908, 5913.

ney's fees under 42 U.S.C. § 1988 are not limited to the prevailing rate in the district where the case is tried." *Donaldson v. O'Connor*, 454 F.Supp. 311, 315 (N.D.Fla. 1978).[7]

Plaintiff seems to recognize these general principles, but seeks to justify Mr. Weston's $170 hourly rate on the ground that "no counsel competent and experienced in this area of the law were available in the Little Rock area." Appellant's Reply to Appellees' Response, p. 19. We disagree. The bar of Arkansas[8] is neither so timid nor so parochial as plaintiff implies. This is a complex case, and Mr. Weston may accurately be described as a "specialist" with a national practice in the First Amendment area and particular experience in zoning matters. But there are a number of lawyers who will cheerfully attack the "establishment" on constitutional grounds for a reasonable fee, or even, in some cases, for no fee at all. The willingness to take on controversial cases is one of the glories of the bar, and the day has not yet come when a civil-rights plaintiff must go out of state to get representation. This case was the first in the state, so far as we know, involving adult-movie zoning, but this field of law is not so recondite as to be beyond the ken of local counsel. In short, our knowledge of the bar leaves us in no doubt that plaintiff could have found adequate counsel closer to the situs of the case for substantially less than $170 an hour.

In our opinion, the following hourly rates are reasonable and should be allowed for plaintiff's counsel:

|  | Rate Requested | Rate Allowed |
|---|---|---|
| Mr. Hall | $70, $75 | $70, $75 |
| Mr. Weston | $170, $190 | $100, $110 |
| Mr. Brown | $170 | $100 |
| Mr. Garrou | $125 | $70 |
| Mr. DePiano | $85, $95 | $60, $65 |
| Ms. Erlbaum | $60 | $40 |

We in no way deprecate plaintiff's right to employ counsel of its own choice. Nor is there any doubt that Mr. Weston, who came to the bar 12 years ago, and his firm performed with a high degree of skill and learning. Counsel will still be contractually entitled to whatever fee they and plaintiff agreed to, less, presumably, fees taxed against the City. But our task is to fix a reasonable fee and, in doing so, to be mindful of Congress's purpose to encourage the enforcement of constitutional rights by awarding "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S.Rep.No. 94–1011, *supra*, at 6, U.S.Code Cong. & Admin.News 1976, p. 5913. We think the hourly rates set out above meet this test.

Accordingly, we make the following award of fees and expenses to plaintiff for work done by counsel before this Court:

| | | |
|---|---|---|
| For Mr. Hall | | $1,648.50 |
| plus expenses | | 117.47 |
| | | $1,765.97 |
| For Mr. Weston | | |
| 84.8 hours in 1981 at $100.00 | = | $8,480.00 |
| 6.8 hours in 1982 at $110.00 | = | 748.00 |
| | | $9,228.00 |
| For Mr. Brown | | |
| 11.4 hours at $100.00 | = | $1,140.00 |
| For Mr. Garrou | | |
| 15.3 hours at $70.00 | = | $1,071.00 |
| For Mr. DePiano | | |
| 22.6 hours at $60.00 | = | $1,356.00 |
| 14.3 hours at $65.00 | = | 929.50 |
| | | $2,285.50 |
| For Ms. Erlbaum | | |
| 29.3 hours at $40.00 | = | $1,172.00 |
| Total fees for Brown, Weston, & Sarno | = | $14,896.00 |
| plus expenses | = | 2,847.10 |
| | | $17,743.10 |
| Mr. Hall's total | = | 1,765.97 |
| Grand total of fees and expenses allowed | = | $19,509.07 |

7. We think our view of this matter is not inconsistent with *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir. 1982), in which a District Court was reversed for limiting recovery of attorneys' fees to local rates. The Seventh Circuit in that case emphasized that the defendant had invited the use of high-priced, out-of-town counsel by its own use of similarly expensive non-local attorneys. Moreover, there was no finding that local counsel with the requisite expertise were available to try the plaintiffs' case.

8. The same thing could be said of any other state in this Circuit.

Thus, as against a request of $29,702.07, we allow $19,509.07. On the whole, we consider this reasonable but not excessive compensation for the services of plaintiff's counsel on appeal. The Clerk of this Court is directed to insert this award in an amendment to this Court's mandate, and to request the Clerk of the District Court to add the amendment to the mandate. See 8th Cir.R. 17. The award made in this opinion shall bear interest at the rate of ten per centum per annum from and after the date of the filing of this opinion until paid.[9] The District Court should now proceed to make an award for services of counsel rendered before it.

It is so ordered.

---

**9.** Ark.Stat.Ann. § 29–124, which we adopt in the absence of a federal statute on the subject, provides that judgments shall bear interest at no less than six nor more than ten per centum simple interest per annum. A federal statute has been enacted, P.L. 97–164, § 302, but it is not effective until October 1, 1982.