M.C. JEFFERS, Al Porter, Evangeline Brown, Clyde Collins, O.C. Duffy, Earl Foster, the Rev. Eilihue Gaylord, Shirley M. Harvell, Linda Shelby, J.C. Jeffries, Lavester McDonald, Joseph Perry, Clinton Richardson, T.E. Patterson, Earnest Simpson, Brian Smith, and Charlie Statewright, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Bill CLINTON, in his Official Capacity as Governor of Arkansas and Chairman of the Arkansas Board of Apportionment; W.J. McCuen, in his Official Capacity as Secretary of State of Arkansas and Member of the Arkansas Board of Apportionment; and Steve Clark, in his Official Capacity as Attorney General

of Arkansas and Member of the Arkansas Board of Apportionment, Defendants.

No. H–C–89–004.

United States District Court,
E.D. Arkansas, E.D.

Submitted June 11, 1991.

Decided Oct. 24, 1991.

Don E. Glover, Dermott, Ark., P.A. Hollingsworth, Hollingsworth Law Firm, P.A., Little Rock, Ark., Olly Neal, Jr., Wilson, Bell & Neal, Marianna, Ark., L.T. Simes, II, Simes & Associates, West Helena, Ark., Penda D. Hair, Washington, D.C., Julius L. Chambers, Sherrilyn Ifill, Dayna L. Cunningham, NAACP Legal Defense Fund Inc., New York City, Sheila Y. Thomas, NAACP Legal Defense Inc., Washington, D.C., Donna L. Dennis, Debevoise & Plimpton, New York City, Kathleen Bell, Wilson & Associates, Helena, Ark., for plaintiffs.

Phil W. Campbell, Paula Jamell Storeygard, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, Ark., for intervenors-plaintiffs.

Frank J. Wills, III, Atty. General's Office, Little Rock, Ark., for defendants.

Before ARNOLD, Circuit Judge, EISELE, Senior District Judge, and HOWARD, District Judge.[*]

ARNOLD, Circuit Judge.

We have before us plaintiffs' final motion for attorneys' fees and expenses. Over two years ago the plaintiffs filed this lawsuit challenging the apportionment of the General Assembly of Arkansas. They argued that the redrawing of legislative districts after the 1980 census violated the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, and the Fourteenth and Fifteenth Amendments. After a twelve-day trial, the Court found that the plaintiffs had proved that the 1981 reapportionment decreased the opportunity for meaningful minority participation in state politics. *Jeffers v. Clinton,* 730 F.Supp. 196 (E.D.Ark.1989). We enjoined the State from holding elections under the discriminatory apportionment, and ordered it to submit a new plan. It did so,

and with modifications suggested by the plaintiffs, this Court approved the new plan in time for the 1990 elections. 756 F.Supp. 1195 (E.D.Ark.1990). In due course, we filed another opinion on the plaintiffs' constitutional claims. Rejecting the bulk of the plaintiffs' contentions that the State acted with discriminatory intent, we agreed that the enactment of general-election run-off statutes for municipal offices violated the Fifteenth Amendment. 740 F.Supp. 585 (E.D.Ark.1990). The State appealed that decision, as well as our earlier holding that the 1981 apportionment violated the Voting Rights Act, to the Supreme Court of the United States. On January 7, 1991, the Supreme Court summarily affirmed our decision on the plaintiffs' voting-rights claim. —— U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). Several months later, the State withdrew its appeal on the constitutional claim. —— U.S. ——, 111 S.Ct. 1096, 112 L.Ed.2d 1200 (1991). Those decisions concluded the merits of the case.

The plaintiffs' victory has brought this request for reasonable attorneys' fees and other expenses of the lawsuit. The plaintiffs have asked for a total of $758,352 (after rounding individual requests to the nearest dollar) in fees for the eleven lawyers and seven paralegals who worked on the case. They have also asked that we double that amount to reflect the contingent nature of the case. In addition, the plaintiffs have asked for $166,831 [1] in other expenses. The particulars of their request are set out in Appendix A.

The State objects. It argues that most of the hourly rates requested by the plaintiffs are too high by Arkansas standards, that the plaintiffs' lawyers spent too much time on the case, that there is no need to enhance the attorneys' fee, and that many

---

[*] It has apparently been customary in three-judge-court cases for the originating district judge to decide fee matters for himself or herself. *E.g., Smith v. Clinton,* No. LR–C–88–29 (E.D.Ark. July 26, 1990). The statute permits this practice, but it does not require it. In this case, the entire Court chooses to consider and decide the motion for fees.

[1] In plaintiffs' final motion for attorneys' fees and costs, they request $167,741 in expenses.

Our calculations reveal a total of $167,481 in expenses. Despite our efforts, we cannot account for the additional $260. Plaintiffs' motion also contains two requests for reimbursement of travel for J. Wilson on October 6, 1989, in the amount of $649.98. We have deducted this amount from their final request to avoid duplication, resulting in a final figure of $166,-831.

of the expenses plaintiffs claim are unreasonable or poorly documented. The State, however, has not opposed all of the plaintiffs' request. On two occasions, we have, on the plaintiffs' motions, ordered the State to pay undisputed amounts of the plaintiffs' request. The State has done so. Our final award will be decreased by those amounts, totalling $231,969.

In the main, we believe that plaintiffs' requests are reasonable. Their petition is thorough and well documented. We award attorneys' fees at rates ranging from $175 an hour for Ms. Hair and Mr. Hollingsworth, who jointly captained this case, to $90 an hour for Mr. Glover. With some adjustments, we award fees for the bulk of the time claimed by plaintiffs. The total fee award is $962,432. This figure represents a lodestar fee of $653,687 enhanced by a contingency multiplier of 50 per cent. Finally, again with reductions, this time substantial ones, we award various expenses of the litigation. The total expense award is $72,060. The details of our award of both attorneys' fees and expenses can be found in Appendix B to this opinion. We reason to these conclusions as follows.

## I.

Setting hourly rates for plaintiffs' lawyers and paralegals is our first task. The plaintiffs request a spectrum of rates for their lawyers, ranging from $195 an hour for co-lead counsel Hollingsworth to $90 an hour for attorney Glover. The plaintiffs support their request with numerous affidavits, attesting to the reasonableness of these hourly rates. The State, relying primarily on the fee order in *Smith v. Clinton*, No. LR–C–88–29 (E.D.Ark. July 26, 1990), urges us to cap the lawyers' fees at $130 an hour, and work down from there based on experience. The plaintiffs request between $60 and $40 for their paralegals. Again, relying on *Smith*, the State argues that $30 or $35 an hour is the going local rate, and therefore the reasonable rate.

■ The first legal question is whether all the out-of-town lawyers associated with the Legal Defense Fund should be held to

local hourly rates. "[T]he prevailing market rates in the relevant community[ ]" are presumptively reasonable, *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). *Smith, supra,* holds that Little Rock, Arkansas is the relevant community for a voting-rights case such as this. The guiding principle here is the availability of qualified and willing local counsel. If it is reasonable for civil-rights plaintiffs to look beyond Arkansas to find such lawyers, then the Court may look beyond Arkansas in setting a reasonable hourly rate for their services. *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir.1982) (en banc). We do not read *Avalon Cinema,* however, to determine conclusively that no prospective civil-rights plaintiff will ever need to seek a lawyer who is not an Arkansan. *Avalon Cinema* requires, rather, a case-by-case determination of the need for outside counsel. 689 F.2d at 140–41. This mammoth case could not have been undertaken without the Legal Defense Fund's lawyers and resources. Indeed, it was not launched until local counsel could be certain of that partnership. See, *e.g.,* O. Neal Supplemental Statement at ¶¶ 9, 10; P. Hollingsworth Supplemental Statement at ¶ 4. The expertise, energy, and resources to challenge numerous legislative districts, covering approximately one-third of Arkansas, are simply not currently available in this State. We conclude, accordingly, that it is reasonable to pay at least some of plaintiffs' out-of-town lawyers at out-of-town rates.

■ We believe the following schedule of hourly rates is reasonable. Ms. Hair, of the Legal Defense Fund, directed this case. She was the guiding force both before and at trial. She was first among equals as co-lead counsel, spending nearly twice as much time on this case as any other lawyer. And she did a splendid job. A reasonable hourly rate for her efforts, given her unique expertise in voting-rights cases, is the rate she requests: $175. Ms. Hair's rate may slightly exceed the local market rate for most top-notch lawyers. Since her services were essential, however, it is reasonable to pay the non-local hourly rate she

requests. Justice Hollingsworth, co-lead counsel and the individual who diligently coordinated the plaintiffs' efforts in Arkansas, has requested $195 an hour. Though his efforts were superb, we think $175, the same rate allowed for Ms. Hair, is reasonable for Mr. Hollingsworth as well. See, e.g., *Little Rock School District v. Pulaski County Special School District No. 1*, No. LR–C–82–866, Order at Schedule B, 1991 WL 255004 (E.D.Ark. Feb. 6, 1991) (awarding Justice Hollingsworth $165 an hour for work done in 1988); *Greenwood v. Ross*, No. LR–C–79–406, Order at 7–8 (E.D.Ark. Feb. 2, 1989) (Howard, J.) (awarding Hollingsworth an average hourly rate of $135 for work during 1986–1988, while noting that $165 was his current hourly rate).

■ The rest of the plaintiffs' legal team will be paid at the following hourly rates, which we find are reasonable: Ms. Karlan—$125; Ms. Cunningham, Ms. Dennis, and Mr. Bird—$110; Ms. Thomas, Ms. Bell, Mr. Neal, and Mr. Simes—$100; Mr. Glover—$90. We believe these rates reflect the relative experience and efforts in this case of the various lawyers. We agree with the State that at least some of the plaintiffs' paralegals should also be limited to the hourly rate currently paid in Arkansas. An hourly rate of $40 is reasonable for plaintiffs' local support staff. See *Little Rock School District, supra* at Schedule B. The paralegals helping non-local counsel, however, are entitled to the slightly higher non-local rate of $50 an hour.

## II.

■ Having decided how much per hour to pay the plaintiffs' lawyers, we must now decide how many hours they should be paid for. The State points out that not all time spent on a case is billable time. The plaintiffs agree. The final fee request mentions several instances of time spent, but not charged. These were not insignificant efforts: they total, by the plaintiffs' estimation, some 900 hours of work. Even so, the plaintiffs seek fees for a large amount of time—4,739.05 hours of lawyers' time and 671.1 hours of paralegals' time. The State argues forcefully that the request is exces-

sive. First, the State sees many projects that supposedly took too long, for example, the two Supreme Court appeals. While only two motions and supporting briefs were produced, the plaintiffs seek pay for almost 400 hours of work. Moreover, the State points to what it considers duplicative efforts. For example, both Ms. Hair and Ms. Cunningham worked on the post-trial papers. Finally, the State argues that some of the claimed time is simply not properly considered billable time. A prominent example is the travel time claimed by non-local counsel. On its face, the State's general point has weight. Over 5,000 billable hours does seem like an extraordinary amount of time to spend on one case.

On reflection, however, we are persuaded that most of the plaintiffs' lawyers' and paralegals' time was necessary and well spent. This was a Herculean effort. We tried the case for twelve days. It involved a cloud of witnesses and a mountain of exhibits. Extensive expert testimony was required. It took this Court three opinions to consider and decide the many issues raised. As the plaintiffs remind us, the State has recognized the magnitude of the case. It noted that the remedy, for example, "involve[d] twenty-three of one hundred House districts and eight of thirty-five Senate districts [and] affect[ed] hundreds of thousands of voters in east and south Arkansas." Defendants' Motion for Stay of Judgment Pending Appeal at 6, No. 89–2008 (U.S., filed March 12, 1990). The plaintiffs' lawyers' time records are in the main thorough and credible. Indeed, one aspect of the plaintiffs' final request deserves commendation. Responding to the State's initial concerns, almost every lawyer's claim was revised by omitting some challenged time. There are exceptions, of course, and the State has done a good job of bringing them to the Court's attention. We consider them in detail below. Any remaining excessiveness or duplication is negligible. Accordingly, we find that the plaintiffs' lawyers and paralegals reasonably expended 5,060.88 hours in this case. The particulars of this finding are set out in Appendix B.

The State first contends that almost every lawyer spent too much time working on the case. It suggests across-the-board cuts in most of the lawyers' time requests. The State's blanket assertions are not persuasive. It attacks, for example, the 89 hours Ms. Hair spent on the post-trial brief. That document was invaluable to the Court in preparing its opinion. We see excellence here, not excessiveness. The State also points to Ms. Hair's and Ms. Cunningham's efforts on appeal. It calculates the cost of plaintiffs' motions to dismiss in the Supreme Court at $1,300 a page for the first motion and $890 a page for the second one. Those figures alarm. But like most statistics, they do not tell the whole story. Divided into legal research, strategy conferences, review of the record, and actual drafting and editing, plaintiffs' efforts on appeal come into focus. Beyond the statistics lie diligence and craftsmanship, not excess. Further, not all of this time was devoted to the documents themselves: the lawyers also spent time helping the Justice Department through the extensive record on appeal. Moreover, the State's cost estimates do not account for our reduction in Ms. Cunningham's hourly rates. In general, then, we find the amount of time plaintiffs spent both justifiable and justified.

■ The State is correct, however, in its general assertion regarding attorney Glover's records. Their indefiniteness is troubling. The plaintiffs' response—that Glover did valuable work gathering evidence—is probably true, but it is insufficient to meet the State's objection. The infirmity lies in the lack of thorough documentation. The bulk of plaintiffs' fee request sets a high standard on this score, one that Glover's request does not meet. Our uncertainty leads us to award Glover one-half of the hours claimed for his work outside of trial.

■ The State next contends that the plaintiffs' lawyers duplicated each other's work. The fee award, the State continues, should be reduced accordingly. We agree that it is unreasonable to pay for the same work twice. It is not unreasonable, however, to divide responsibilities among many lawyers in a large case such as this. To remedy any duplication caused by the shuffling of lawyers, the plaintiffs have not claimed any time for lawyer Ifill of the Legal Defense Fund. That amounts to 118 hours. This is a reasonable adjustment. Except for the specific instances discussed below, we reject the State's duplication objections.

■ While this case needed a team of lawyers and legal assistants to prepare and try, we are nevertheless convinced that fewer people could have done the job at trial. There were always five, and sometimes as many as eight, lawyers at the plaintiffs' table. That is duplicative. We believe three lawyers, or at most four, could have tried this case effectively. All of the co-lead counsels' time at trial is reasonable: Ms. Hair and Justice Hollingsworth needed to be in the courtroom to run their case. Each of the other lawyers' trial-time requests, however, must be reduced. A rotation of effort would have been the better course. To effect that rotation—in pay, if not in time—we award each of the other lawyers one-half of the trial time they claim. The same problem arises with respect to paralegals. One was surely a necessity. The three legal assistants that worked the trial, often in pairs, were not. We award each of them one-half of the trial time they claim.

■ The State also sees duplication during the remedy phase of the case. Often two, and sometimes three, lawyers attended each meeting of the Board of Apportionment. One lawyer could have adequately represented the plaintiffs' views at each meeting. Justice Hollingsworth was the only plaintiffs' lawyer to attend all of the meetings. He was their logical representative, and we award all of his time. Lawyers Neal and Simes, on the other hand, though helpful, were not necessary participants on every occasion. We award half of the approximately thirty-nine hours they claim for attending Board meetings.

■ We come finally to the third aspect of the State's excessiveness argument: improper time. The plaintiffs supposedly

seek payment for time that it is not appropriate to bill. The State first contends that it is unreasonable to bill for time the out-of-town lawyers spent travelling to and from Arkansas. Here again, the State relies on the order awarding fees in the *Smith* case. As plaintiffs point out, much of the contested time was spent travelling in Arkansas interviewing witnesses and gathering evidence. This is clearly appropriate. Further, we have found, distinguishing *Smith*, that this case could not have been prosecuted without a partnership of local and non-local counsel. It follows, therefore, that it is reasonable for those out-of-town lawyers to expect pay for the time spent getting to and from their client. *Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 396 (8th Cir.1987); *Craik v. Minnesota State University Board*, 738 F.2d 348, 349–50 (8th Cir.1984) (per curiam). Moreover, though it is not required, at least some of the plaintiffs' lawyers often worked in transit. See, *e.g.*, Statement of D. Cunningham at ¶ 4; Supplemental Declaration of P. Hair at ¶ 18.

■ The State also contends that chunks of Ms. Hair's, Ms. Karlan's, and Mr. Simes's claims are not related to this case at all. The challenged time involves the unsuccessful intervention in *Smith v. Clinton*. The plaintiffs acknowledge the State's point, but claim that the failed intervention formed the foundation of the *Jeffers* complaint. The *Smith* time, plaintiffs say, is thus also *Jeffers* time, and as such is properly claimed now. We are persuaded by the plaintiffs' explanation.

■ The State finally points to a miscellaneous list of claimed time it says is improper. Much of what it objected to along these lines has been withdrawn in the plaintiffs' final request. Two remaining items need to be adjusted. Ms. Hair claims the 7.3 hours she spent getting an apartment in Little Rock. Since she is not from here, she needed a place to stay during the trial. It is not reasonable, however,

to pay Ms. Hair $175 an hour to do what another (a local paralegal, for example) could have done for far less. We do not believe a private client would pay a lawyer for an apartment search or getting the utilities hooked up. This part of Ms. Hair's request is denied. Mr. Neal claims fourteen hours for monitoring elections in the new districts created by this case. The State does not see the relevance of this time. Neither do we.[2] We reject the rest of the State's objections to the time claimed by plaintiffs' lawyers and paralegals.

### III.

■ Multiplying the adjusted hourly rates by the adjusted amounts of time worked by each lawyer and paralegal yields an attorneys' fee of $653,895. That is what the cases call the "lodestar" figure. As the name suggests, it is a guide. The lodestar "*is presumed* to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (emphasis in original, quotation omitted). Plaintiffs, however, seek more. They request that we enhance their attorneys' fee by 100 per cent. In other words, they ask us to double it.

■ The Supreme Court has held that in certain circumstances enhancing the lodestar to account for the possibility of loss is proper. *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 731, 733–34, 107 S.Ct. 3078, 3089, 3090–91, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*) (O'Connor, J., concurring in part and concurring in the judgment). The animating principle—of both the underlying fee statutes and the cases interpreting them—is the need to attract competent counsel for meritorious cases. If a contingency enhancement is necessary to meet this need, then it is reasonable to award one. See, *e.g.*, *Hendrickson v. Branstad*, 934 F.2d 158, 162–63 (8th Cir.1991). Useful facts in analyzing this issue are how the "particu-

---

**2.** In their final motion for attorneys' fees, plaintiffs state they do not claim 30.5 hours billed by Mr. Neal. Since the plaintiffs do not indicate *which* 30.5 hours they are not claiming, we err on the side of assuming (since plaintiffs have the burden of establishing the right to the fees) the hours they do not claim are not the hours Mr. Neal billed for monitoring elections.

lar market compensates for contingency" cases as a class, and whether, "without an adjustment for risk[,] the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." *Delaware Valley II*, 483 U.S. at 733, 107 S.Ct. at 3091 (quotation and citation omitted).

We conclude the plaintiffs here have met their burden under *Delaware Valley II* to justify enhancement of their attorneys' fees. Under *Morris v. American National Can Corp.*, 941 F.2d 710, 715 (8th Cir. 1991),[3] the plaintiffs are not required to show that they "actually faced substantial difficulty in retaining counsel[.]" Rather, the inquiry is whether the plaintiffs would have faced such difficulty in the absence of the prospect of an enhancement.

Plaintiffs here have made that showing. Justice Hollingsworth states "that without compensation for risk, no law firm [his] size can regularly accept [civil-rights] cases." P. Hollingsworth Supplemental Statement at ¶ 1. Another of the plaintiffs' attorneys, L.T. Simes, asserts that "[p]rior to contacting [the Legal Defense Fund], I approached two other organizations for assistance in this case—Eastern Arkansas Legal Services and the Lawyers' Committee for Civil Rights. Each of these organizations refused to handle the case because of its difficulty and broad scope." L.T. Simes Supplemental Statement at ¶ 5. Absent a contingency enhancement, he doubts plaintiffs could have retained competent attorneys.

We find the affidavit of Jim Guy Tucker particularly persuasive on this issue. He has no financial stake in the outcome of this case in particular or civil-rights cases as a class. In his affidavit, Lieutenant Governor Tucker expresses the opinion that without an enhanced hourly rate, attorneys have no incentive to accept voting-rights cases.

Similarly, plaintiffs have adequately demonstrated that the relevant market, Little Rock, Arkansas, compensates contin-

gency cases as a class by enhancing attorneys' fees. Again, Justice Hollingsworth avers, via affidavit, that he regularly receives four or five times his hourly rates in successful contingency cases. P.A. Hollingsworth Declaration at ¶ 9. Other attorneys provide a similar figure. R. Quiggle Statement at ¶ 4; O. Neal Supplemental Statement at ¶¶ 6, 7 (four or five times hourly rate in personal injury cases; 1.75 times hourly rate in social-security cases). In a more conservative estimate, John Walker states that the Little Rock market tends to compensate attorneys in contingency cases "in the neighborhood of two to four times as much as their normal hourly billing rates." J.W. Walker Statement at ¶ 17.

Although the State disagrees with the plaintiffs' request for an enhancement of the lodestar, it has not presented any affidavits of its own which contradict those presented by the plaintiffs. Instead, it cites *dicta* in *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 1682, 109 L.Ed.2d 74 (1990), for the proposition that enhancements are disfavored. It also relies on the Court of Appeals' observation in *Avalon Cinema*, 689 F.2d at 141, that "the day has not yet come when a civil-rights plaintiff must go out of [Arkansas] to get representation." In the face of the specific evidence presented by plaintiffs, we decline to rely on the State's general opposition to the plaintiffs' request. Moreover, we note that *Avalon Cinema* was decided nine years ago. Plaintiffs' uncontradicted affidavits indicate that the civil-rights market in Arkansas has changed since then. No such proof was before the *Avalon Cinema* court, and the issue in that case—the validity of a zoning ordinance under the First Amendment—was considerably less complex and specialized than the multifarious questions presented in the present case.

■ Plaintiffs have established that they are entitled to an enhancement of their attorneys' fees. We cannot agree, however, that plaintiffs are entitled to a

---

**3.** A petition for rehearing with suggestion for rehearing en banc is pending before the Court of Appeals in *Morris*.

100 per cent. enhancement of these fees. Such an enhancement, we think, would result in a windfall to attorneys some of whom might have taken the case without the possibility of an enhancement. We find that an enhancement of 50 per cent. will adequately compensate the plaintiffs' attorneys for the risk of loss without affording them a windfall. After eliminating those hours not entitled to enhancement (i.e., hours spent on the fee petition itself), our calculations reveal that the plaintiffs are entitled to an enhancement of $308,745, resulting in a total attorneys' fee award of $962,432.

IV.

The plaintiffs also seek reimbursement for other expenses of the litigation. These include expert witness fees, court costs, travel, photocopying, regular postage, telephone calls, and overnight mail. These expenses total approximately $170,000. The State raises both factual and legal objections.

■■■ The primary argument about what the law requires concerns the plaintiffs' expert witnesses. By statute, most witnesses are limited to $40 a day, plus reasonable expenses in some circumstances, in compensation for their time. 28 U.S.C. § 1821. The State urges that we adopt that ceiling for all the witnesses in this case, including the experts. Many courts, see, e.g., Friedrich v. City of Chicago, 888 F.2d 511 (7th Cir.1989), vacated, —— U.S. ——, 111 S.Ct. 1383, 113 L.Ed.2d 440 (1991), have allowed successful civil-rights plaintiffs to recover actual expert witness fees and expenses. In a recent case, however, the Supreme Court squarely rejected this special treatment of experts. West Virginia University Hospitals, Inc. v. Casey, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). The plaintiffs point out that this may not be the end of the story. The proposed Civil Rights Act of 1991, which has been passed by the House of Representatives and is pending in the Senate, would overrule West Virginia University Hospitals. The plaintiffs urge us to withhold a ruling on this part of their fee petition until the Congress acts. We are not inclined to wait. It is true that we have retained jurisdiction in this case. By way of a legal argument, however, the most the plaintiffs can offer is the possibility that the law will change. That is not enough. Plaintiffs may recover only $40 per day of testimony plus travel expenses for each of their experts. West Virginia University Hospitals, 111 S.Ct. at 1148. Likewise, the fees not paid by plaintiffs but submitted directly to this Court by one of their experts, Jerry Wilson, cannot be recovered. We award the statutory fee plus allowable expenses, which amounts to a total award of $2,236 for plaintiffs' expert-witness costs.

■■■ The State also challenges the plaintiffs' expense claims in several other respects. While conceding the bulk of the court costs, it argues that four depositions not used at trial should be excluded. We disagree. The plaintiffs are correct in responding that these were reasonable discovery expenses. The State also challenges the approximately $10,000 plaintiffs seek in mail and telephone expenses. We agree that regular postage is not billed separately in this jurisdiction. Smith, supra, at 9. That part of plaintiffs' claim is denied. We find approximately $900 in regular postage in the various expense reports. That amount will be subtracted from the expenses we award to the lawyers who claimed the postage. The State relies on the fee order in the Smith case for its contention that overnight mail and most of the long-distance telephone expenses should likewise be rejected. This part of plaintiffs' request relates to the reasonableness of hiring non-local counsel. Having concluded it was reasonable to hire out-of-town lawyers, we will not impair their communications with their clients and with local counsel. These expenses are reasonable.

■■■ Finally, the plaintiffs have requested several thousand dollars for "miscellaneous expenses." The State objected. We too were troubled initially by the thinness of the plaintiffs' explanation of these expenses in their interim fee petition. In

their final request, however, the plaintiffs responded by offering the State the opportunity to review the receipts beneath this request. In light of that offer, and the State's failure to elaborate any specific objection in its response to plaintiffs' final request, we conclude that most of these expenses should also be allowed. An exception is the additional $9,288 in miscellaneous expenses that relates to plaintiffs' expert-witness costs. For the reasons elaborated above, plaintiffs' experts are limited to their statutory fees. The State has conceded that the rest of the plaintiffs' expenses request—for such things as photocopies and exhibit preparation—is reasonable. It is accordingly allowed.

\* \* \*

We have considered the plaintiffs' fee request, and the State's objections to it, with care. Our decision involves a lot of money. We do not award it lightly. Rather, we are convinced that these fees and expenses fairly compensate these lawyers for their efforts, while not providing them a windfall. The State will have thirty days from the date of this opinion to pay the award. The plaintiffs' request for interest on this award from the date their fee petition was filed is denied.

It is so ordered.

EISELE, Senior District Judge, dissenting.

Although I agree with the majority that Plaintiffs' lead attorneys did a first rate professional job in the representation of their clients in this voting rights case, I, nevertheless, dissent from the fee award because I find it clearly excessive. In my view too many lawyers and too many paralegals were used; the hourly rates awarded are too high and the number of hours allowed excessive. Furthermore, I do not believe, under the facts and circumstances of this case, that any contingency enhancement is called for. I recognize we are dealing here with matters of judgment so I see little benefit in setting forth my specific objections.

Without going into details, the award which I would have approved would be somewhat less than one-half of the award actually made by the Court to the Plaintiffs as the prevailing parties.

### APPENDIX A—PLAINTIFFS' REQUEST [4]

I. TIME
  A. Attorneys

| | | | | | |
|---|---|---|---|---|---|
| 1. | P. Hollingsworth | 738.20 | hrs × $195/hr | = | $143,949 |
| 2. | P. Hair | 1458.00 | hrs × $175/hr | = | $255,150 |
| 3. | P. Karlan | 130.10 | hrs × $150/hr | = | $ 19,515 |
| 4. | D. Cunningham | 871.00 | hrs × $135/hr | = | $117,585 |
| 5. | D. Dennis | 394.00 | hrs × $135/hr | = | $ 53,190 |
| 6. | P. Bird | 92.00 | hrs × $135/hr | = | $ 12,420 |
| 7. | S. Thomas | 428.60 | hrs × $125/hr | = | $ 53,575 |
| 8. | O. Neal | 220.75 | hrs × $125/hr | = | $ 27,594 |
| 9. | K. Bell | 12.90 | hrs × $125/hr | = | $ 1,613 |
| 10. | L. Simes | 261.75 | hrs × $100/hr [5] | = | $ 26,175 |
| 11. | D. Glover | 131.75 | hrs × $ 90/hr | = | $ 11,858 |

  B. Paralegals

| | | | | | |
|---|---|---|---|---|---|
| 1. | T. Hollingsworth | 216.00 | hrs × $ 60/hr | = | $ 12,960 |
| 2. | V. Thompson | 30.00 | hrs × $ 60/hr | = | $ 1,800 |
| 3. | S. Mortman | 121.30 | hrs × $ 60/hr | = | $ 7,278 |
| 4. | C. Birnhak | 82.00 | hrs × $ 50/hr | = | $ 4,100 |
| 5. | S. Bradford | 51.00 | hrs × $ 50/hr | = | $ 2,550 |

**4.** All dollar amounts are rounded to the nearest dollar.

**5.** Plaintiffs' petition does not speak with one voice on Mr. Simes's requested hourly rate. At some points, it is $100 per hour for all his time. At other points, it is $100 per hour for his time in court and $85 per hour for his time out of court. Since the State concedes, and we agree, that $100 an hour is a reasonable rate for all his time, the discrepancy is not material.

| 6. | T. Aldrich | 20.80 hrs $\times$ \$ 50/hr | = \$ 1,040 |
|---|---|---|---|
| 7. | O. Hampton | 150.00 hrs $\times$ \$ 40/hr | = \$ 6,000 |
| | | TOTAL | = \$758,352 |

II. EXPENSES

  A. Paid By the Legal Defense Fund

| | | |
|---|---|---|
| 1. | telephone, postage, and copying | \$ 15,031 |
| 2. | court costs | \$ 9,296 |
| 3. | expert witness fees and costs | \$ 82,882 |
| 4. | travel | \$ 26,068 |
| 5. | miscellaneous | \$ 16,099 |
| 6. | various expenses since June 1990 | \$ 1,776 |

  B. Paid by Individuals

| | | |
|---|---|---|
| 1. | P. Hollingsworth | \$ 9,891 |
| 2. | O. Neal | \$ 1,235 |
| 3. | K. Bell | \$ 131 |
| 4. | L. Simes | \$ 484 |
| 5. | J. Wilson | \$ 3,938 |
| | TOTAL = | \$166,831 |

### APPENDIX B—ATTORNEYS' FEES AND EXPENSES AWARDED

I. TIME

  A. Attorneys

| | | | |
|---|---|---|---|
| 1. | P. Hollingsworth | 738.20 hrs $\times$ \$175/hr | = \$129,185 |
| 2. | P. Hair | 1450.70 hrs $\times$ \$175/hr | = \$253,873 |
| 3. | P. Karlan | 130.10 hrs $\times$ \$125/hr | = \$ 16,263 |
| 4. | D. Cunningham | 835.00 hrs $\times$ \$110/hr | = \$ 91,850 |
| 5. | D. Dennis | 359.00 hrs $\times$ \$110/hr | = \$ 39,490 |
| 6. | P. Bird | 92.00 hrs $\times$ \$110/hr | = \$ 10,120 |
| 7. | S. Thomas | 405.60 hrs $\times$ \$100/hr | = \$ 40,560 |
| 8. | O. Neal | 149.25 hrs $\times$ \$100/hr | = \$ 14,925 |
| 9. | K. Bell | 12.90 hrs $\times$ \$100/hr | = \$ 1,290 |
| 10. | L. Simes | 214.16 hrs $\times$ \$100/hr | = \$ 21,416 |
| 11. | D. Glover | 59.87 hrs $\times$ \$ 90/hr | = \$ 5,388 |

  B. Paralegals

| | | | |
|---|---|---|---|
| 1. | T. Hollingsworth | 205.00 hrs $\times$ \$ 50/hr | = \$ 10,250 |
| 2. | V. Thompson | 30.00 hrs $\times$ \$ 50/hr | = \$ 1,500 |
| 3. | S. Mortman | 108.30 hrs $\times$ \$ 50/hr | = \$ 5,415 |
| 4. | C. Birnhak | 82.00 hrs $\times$ \$ 50/hr | = \$ 4,100 |
| 5. | S. Bradford | 51.00 hrs $\times$ \$ 50/hr | = \$ 2,550 |
| 6. | T. Aldrich | 20.80 hrs $\times$ \$ 40/hr | = \$ 832 |
| 7. | O. Hampton | 117.00 hrs $\times$ \$ 40/hr | = \$ 4,680 |
| | | TOTAL | = \$653,687 |

II. EXPENSES

  A. Paid By The Legal Defense Fund

| | | |
|---|---|---|
| 1. | telephone, postage, and copying | \$14,689 |
| 2. | court costs | \$ 9,296 |
| 3. | expert witness fees and costs | \$ 2,236 |
| 4. | travel | \$26,068 |
| 5. | miscellaneous | \$ 6,811 |
| 6. | various expenses since June 1990 | \$ 1,634 |

  B. Paid By Individuals

| | | |
|---|---|---|
| 1. | P. Hollingsworth | \$ 9,541 |
| 2. | O. Neal | \$ 1,181 |
| 3. | K. Bell | \$ 120 |

4. L. Simes      $ 484
5. J. Wilson      $ 0

TOTAL = $72,060

III. FINAL ATTORNEYS' FEES AND EXPENSES AWARD